## JOHN KELLOGG *v.* JOHN DICKINSON.

The right of a pew holder to a pew in a meeting house is subordinate to the rights of the owners of the house. He has an exclusive right to occupy his pew, when the house is used for the purposes, for which it was erected; but he cannot convert his pew to other uses, not contemplated. If the house is taken down, as a matter of convenience, or taste, by the owners thereof, the owner of the pew is entitled to compensation; but if the house is taken down as a matter of necessity, and because it has become ruinous, and wholly unfit for the purposes, for which it was erected, the owners of the house are not liable to make any compensation to the separate pew holders, but may take the avails of the materials, of which the house is built, for the purpose of erecting another house in its place.

The owner of a pew in a meeting house may sustain an action of trespass on the case against one, who unlawfully disturbs him in the possession of his pew. But he holds his pew subject to the right of the owners of the house to take down and rebuild the house, in case of necessity, without making him compensation.

The correctness of the doctrine laid down in *Daniel* v. *Wood et al.*, 1 Pick. 102, in reference to the right of pew owners, recognized.

Where land was leased to a town in 1797, by durable lease, for the purpose of erecting and continuing thereon a meeting house, and a meeting house was accordingly erected there by the town, under the statute then in force, and the pews in the house were sold by the town in town meeting, and, in 1814, a religious society was organized in the town under the provisions of the statute of 1814, and the society continued to occupy the house for the same purposes for which it had been previously occupied, and the town subsequently conveyed to the society all the interest of the town in the land and house, it was held, that the society succeeded to all the rights of the town, and became the owners of the house and land, and might, in case of necessity, take down and rebuild the house, without making compensation to the pew owners.

TRESPASS ON THE CASE, for the destruction of certain pew rights, of which the plaintiff claimed to be seized and possessed in the old congregational meeting house in Benson. Plea, the general issue, and trial by the jury,—WILLIAMS, Ch. J., presiding.

On trial the plaintiff introduced in evidence the records of the town of Benson, tending to show that the said meeting house was

erected in the year 1797 and completed about the year 1803, in pursuance of the votes and at the expense of the town; and that the pews in the house were sold at auction, in town meeting, agreeably to a vote of the town.   The plaintiff also proved title in himself to the pews described in his declaration, and gave evidence tending to show the demolition and destruction of the house, by the defendant, and others acting under his direction, in the year 1842, as charged in his declaration.

The defendant gave in evidence the records of the First Congregational Society in Benson, showing that that society became legally organized on the 30th day of November, 1814, and also evidence tending to show, that a former society, using the same form of worship and employing the same minister, had constantly occupied the said house for several years previous thereto; and that the society, after its organization, continued to occupy the house as a place of public worship until the time of its demolition.   The defendant also introduced a lease from Asa Farnham to the inhabitants of the town of Benson, dated January 10, 1797, conveying the land on which the said house was subsequently erected, " to be used and improved for a meeting house and green so long as the said inhabitants should want it for that purpose; " also the proceedings of a town meeting of the town of Benson, held on the 13th day of January, 1842, showing that the town directed the selectmen to release to the said First Congregational Society all the right, title and interest of the town in the house and the ground occupied by the same, on condition that the society should build, or cause to be built, on the same land, a good and convenient room for holding town meetings,—the room to be used and controlled by the society, except for the purpose aforesaid; also a deed from the selectmen of the same date, and executed in pursuance of the said vote; and also a deed from one Joseph Bascom to the society, of the same date, releasing all his right, title and interest in the same land and house.

The defendant also introduced in evidence the proceedings of the said society, in the year 1842, showing that the defendant acted under the licence and authority and in pursuance of the votes of the society, in taking down the said house; and that the society, in the same year, erected a new meeting house on the same ground, but not on the same site, occupied by the old house.   But no evidence

was given, tending to show that any compensation, or indemnity, was provided to the plaintiff, as a pew holder in the old house. Evidence was also introduced by the defendant, tending to show that the old meeting house was inconvenient, decayed, and unfit longer to be used as a place of public worship. The plaintiff introduced evidence to counteract this, and to show that the pews in the old house were valuable to the owners. It appeared, from the evidence introduced by both parties, that the old house was appraised from the society to the defendant, who was employed by the society to build the new meeting house, at the sum of two hundred dollars, for the purpose of taking the same down and using the materials in the construction of the new house, and that the defendant received the old house at the appraisal, towards defraying the expenses of building the new house.

The plaintiff requested the court to instruct the jury, that the town, having built the old house and sold the pews therein, had no power, or right, to sell the lands on which the house stood, or its rights in the house, without the assent of the pew-holders; that the possession of the house was in the pew-holders, and not in the town, or society, inasmuch as the former were the real occupants, under a purchase from the town, and claiming as owners of the several pews; that neither the town, or society, would have a right to destroy the house, without the assent of the pew-holders; and that, if either had a right to take down the house for the purpose of rebuilding, they had no right to change its location.

The court refused so to charge the jury, but did instruct them, that, when the pew-holders, by the purchase of the pews, pay for the erection of the house, they are to be regarded as having the beneficial interest in the property, and the town, or society, if they hold the fee, hold it in trust for the pew-holders; that, if the jury should find, that, after the repeal of the law imposing the obligation to support public worship on the town, in the year 1807, the old house continued to be occupied by a society employing the same minister and using the same form of worship, and that such occupancy was continued, as above stated, by the First Congregational Society, in such case, the said society, by the vote of the town and deed of the selectment to the society, would succeed to the rights which the town formerly had in the house in its parochial capacity; and that

the town, or society, had the general right, or fee, in the house, and that the pew-holders had a subordinate right, or easement, merely. That a town, parish, or society has the right to take down their meeting house in order to rebuild, either as a matter of necessity, or expediency, and that in the former case they are *not*, and in the latter they *are*, bound to make an adequate compensation to the pew-holder for the loss of his pews; that where the meeting house is so old and ruinous that the jury will say it was necessary to take it down, there should be no compensation to the pew-holder; but that a case of necessity must be strictly such; and that although, taking into consideration the age, decay, and inconvenience of this house, the jury might be of opinion that the taking it down and erecting a new one was expedient and commendable, yet that the society had no right to take it down, because it was inconvenient, decayed, and out of repair, unless it had become unsuitable for the purposes for which it was erected, without indemnifying the pew-holders; and that, if they were satisfied that the house was, and, by moderate repairs, would have continued to be, for a considerable time, a convenient and suitable place of public worship for the society and the pew-holders, and that the pews, as such and for the use and purposes for which they were intended, were valuable property to the plaintiff, they ought to find a verdict for the plaintiff for such sum as his interest in the pews was worth; otherwise they ought to find for the defendant.

The jury returned a verdict for the defendant. Exceptions by plaintiff.

*C. Linsley* and *L. C. Kellogg* for plaintiff.

1. The deed from the town to the society was invalid to convey any right or title; because the town, by a sale of the pews in the house, had conveyed all its beneficial use to the pew holders. And if the town be considered as still having the title, they are to be treated as mere trustees for the benefit of the pew-holders, and incapable of substituting others in their places.

2. After the enactment of the statute of 1807, the town had no power to alter, repair, or rebuild the house; and consequently the pew owners would thenceforth be entitled to hold the property as joint owners, and the power of altering, repairing, rebuilding, &c.,

which before that time may have been in the town, belonged, it would seem, to the pew owners.

3.  If it be determined, that the society succeeded to the rights of the town, then we insist, that, as the pew-holders are the only persons entitled to the use of the property, they, only, are entitled to decide when the beneficial use of the property requires outlays, repairs, &c.  If a different doctrine be adopted, and the pew-holders are treated as having the mere right to sit in the pews, then it follows, that those, who alone can use such a house, have no power to alter, repair, or rebuild it, and are subject to the mere will of those, who may have no inclination to do either.

4.  Pews, in this country, are real estate, and consequently must be governed by the laws that are applicable to real estate.  *Bates* v. *Sparrell*, 10 Mass. 326.  *Baptist Church of Ithica* v. *Bigelow*, 16 Wend. 28.

5.  If the society had the title to the property, then we insist, that they could not destroy the house, or sell it, (as in the present case,) without making compensation to the pew-holders.  This principle, being a dictate of natural justice, can scarcely require the aid of judicial decisions to establish it.  It is distinctly recognized in the case of *Gay* v. *Baker*, 17 Mass. 435.  *The subsequent cases*, in which it has been held, that a parish may destroy a house, when it is in a ruinous and decayed condition, are put on the ground of local statute laws in relation to parishes, and are quite inapplicable to voluntary associations, under general laws, giving such association corporate powers.  In Massachusetts parishes are authorized, by law, to build, repair and rebuild houses of public worship ; and the expenses are defrayed by a general tax.  Connected with these statutory provisions they have adopted maxims and principles peculiar to themselves, which in *Daniel* v. *Wood*, (1 Pick. 102) are said to be " the common law of the land in relation to such kind of property."  But this law is understood to apply only to parishes ; for in 1817 a statute was passed, giving proprietors of meeting houses, (not parishes,) the right to repair and rebuild, on indemnifying the pew-holders.  In `Wentworth` v. *The First Parish of Canton*, 3 Pick. 344, the court treat the statute as designed to give to other proprietors the rights which *parishes* in that state possessed before.  No case can be found, where it has been held, that such a

Kéllogg v. Dickinson.

society as *this* had the right to take down and destroy the pews, without the assent, or against the wishes, of the pew-holders.

6. The case shows, that the town sold their right for a valuable consideration, viz. a room in the new house ; and that the society sold their real or pretended right for two hundred dollars,—all at the expense of the pew-holders. We can find no case maintaining the principle, that a town, or parish, may sell the house and take the value thereof to their own use, without preserving the rights of, or making compensation to, the pew-holders. *Kimball v. Rowley,* 24 Pick. 347.

*Briggs & Williams* for defendant.

1. We contend, that the First Congregational Society succeeded to the parochial rights, which the town previously had. *Winthrop* v. *Winthrop,* 1 Greenl. 208. *First Parish in Medford* v. *Pratt,* 4 Pick. 222. *Daniel* v. *Wood,* 1 Pick. 102. *Milford* v. *Godfrey,* 1 Pick. 91. *Merwin et al.,* v. *Camp et al.,* 3 Conn. 35. The first part of the charge, then, was correct, and is sustained by reason and authority.

2. The second part of the charge is in the language used in the case of *Howard* v. *First Parish in N. Bridgewater,* 7 Pick. 139, in which the same question was directly decided. The rights of pew holders are fully discussed in the case of *Daniel* v. *Wood,* 1 Pick. 102, and that case is recognized and enlarged upon in *Wentworth* v. *First Parish in Canton,* 3 Pick. 344, in which it was decided, that, when a meeting house has become unfit for use as a place of public worship, it may be entirely demolished and its materials be worked into a new house, or it may be sold, and its proceeds go into the treasury, to aid in rebuilding; and that, in such cases, no individual pew holder can claim his share of the materials, or of the proceeds of their sale,—for he does not own them, but only the right of using the pew.

The opinion of the court was delivered by

WILLIAMS, Ch. J. On the trial of this action in the court below the right of a pew holder to a pew in a meeting house was recognized only as an inferior right to that of the owners of the house. If the house was taken down as a matter of convenience, or taste,

by the owners, the owner of the pew was held entitled to compensation; if as a matter of necessity, because the house had become ruinous and wholly unfit for the purposes for which it was erected, the owners thought proper to take it down, they were held at liberty to do so, without making any compensation to the separate pew holders. On examination we think that the decision of the county court was correct, and that it was in conformity to the principles of the law of England upon this subject, as well as the law recognized in this State and in the neighboring States.

In England the right to a seat in a church is usually a subject of ecclesiastical jurisdiction; but a right to a pew may be annexed to a house and become an easement appurtenant thereto; and for a disturbance of the owner in the possession thereof an action on the case lies at common law. On the ground that a right to a seat in a church, not annexed to the house, but claimed by an individual, was of ecclesiastical jurisdiction, the courts of law, in the cases of *Stocks* v. *Booth*, 1 T. R. 428, and *Mainwaring* v. *Giles*, 5 B. & Ald. 356, [7 E. C. L. 129,] refused to entertain jurisdiction of a suit brought for a disturbance in such right; but such an action was sustained in the case of *Rogers* v. *Brooks et ux.*, 1 T. R. 431, in note, where the right was claimed as appurtenant to a house. I think, also, that a person may, in England, acquire a right to a pew in certain cases, so as to maintain trespass against one who destroys, or breaks, the pew. It was so considered in the case of *Dantrie* v. *Dee*, Palm. 46, [20 Vin. 457,] and the authority of that case for this position is recognized by BEST, Ch. J., in the case of *Spooner* v. *Brewster*, 3 Bing. 136, [11 E. C. L. 69.] In this country the right of the owner of a pew to maintain trespass has been recognized in several cases. *Gay* v. *Baker*, 17 Mass. 435. As we have no ecclesiastical courts in this country, and as the right to a pew, or a seat in a church, is unquestioned here, and the property therein is considered as partaking of the character of real estate, there can be no valid objection to sustaining an action of trespass *vi et armis*, if the owner is disturbed in his possession. This action is rightly brought, to recover for the injury of which the plaintiff complains, if there exist no other objections to his recovery, inasmuch as he proved that he was owner of the pew in question.

The next question, which arises, is as to the authority, under

which the defendant acted, and involves the question, as to the claim of the society under whom he acted. In England the fee of a church is in the parson, who is a sole corporation. The church may be built in a variety of ways, which it is not necessary to consider in this case. The disposal of the seats is usually with the ordinary. In certain cases, however, an individual may, by prescription, acquire a right to a seat in a church, and he cannot be displaced nor interrupted by the parson, church warden, or ordinary himself. *Francis* v. *Lea*, Cro. Jac. 366. In this country a church may be built by a parish, an incorporated society, or by an individual. These several methods were recognized in the case of *Bakersfield Cong'l Soc.* v. *Baker*, 15 Vt. 119. The persons, who build a meeting house in either of these ways, may retain the fee, and may maintain an action of trespass for an injury to the yard, or buildings, and the right to a seat, or to the pews, may be in other individuals, entirely distinct from them. The interest of the pew-holders is several. They have an exclusive right to occupy a particular seat, to the exclusion of all others, when the house is used for the purposes for which it was erected. This right of the pew-holders, however, must necessarily be a qualified and subordinate right. They may occupy their seats for the purpose of attending public worship ; but the individual cannot convert his pew to other uses, not contemplated. It is not necessary for us to say what might be done, either by a majority of the pew-holders, or by the owners of the house, if they should become of a different faith and were disposed to occupy it for a worship not recognized, and to which the minority did not adhere. It is enough for us to say, that we recognize the correctness of the doctrine laid down in *Daniels* v. *Wood*, 1 Pick. 102.

In England, as well as here, there exists a right to repair and rebuild a church, and of course to demolish and take down one already built, in case of necessity. This right was recognized in the case before mentioned from 1 Term Reports. It was very distinctly decided in the case of *St. Mary Magdalen Bermondsey Church in Southwark*, 2 Mod. 222,—a case much labored, because there were twenty four quakers, who were unwilling to pay towards the building a church. " In a prohibition it was the opinion of the ' whole court, that, if a church be so much out of repair, that it is ' *necessary* to pull it down, and that it cannot be otherwise repaired,

'in such case, upon a general warning, or notice, given to the par-
'ishioners, much more if there be notice given from house to house,
'the *major part* of the parishioners then present, and meeting ac-
'cording to such notice, may make a rate for the *pulling down* of
'the church to the ground and building of it upon the old founda-
'tion." In Massachusetts this subject has been much considered,
and it is well settled there, that the property of an individual in a
pew is subject to a right in the parish to pull down and rebuild the
meeting house.

The right of an individual pew-holder to a *compensation for his*
interest in a meeting house, in certain cases, was recognized by the
county court in the trial of this case; and we think that the law was
correctly laid down to the jury, if the society, under whom the de-
fendant acted, succeeded to the rights of the parish, who built the
house.

In the first place, from what has already been remarked it is appa-
rent, that the interest of the pew-holder is only a right to a particu-
lar seat in the house for the purposes of public worship. The build-
ing itself was not erected by the pew-holders, but by the parish, who
owned the fee of the land and erected the house. The pew-holder
has, therefore, no property in the building itself. His right is, to
have the house continued as a place of public worship, if it can be
done, so that he can enjoy his privilege of occupying that seat.
The parish, even though the house is comfortable and convenient,
may abandon it, or refuse to support public worship therein, so that
his right to a seat may be of but little value for the time being; yet
so long as it may be made a comfortable place of public worship, it
may be of some value to him, in case others should be permitted to
occupy it, or in case the parish should *again resort to it.* The pew-
holder may therefore rightly claim, that the house should not be
demolished without making him a compensation for his interest
therein.

If, however, the house becomes wholly ruinous, unfit for a place
of worship, and *cannot be repaired, so as to be useful or convenient*
for that purpose, it is evident there is no beneficial interest left in
the pew-holder, for which he can claim a compensation. His right
to sit in a house without doors and windows, and when he cannot
be protected from the inclemencies of the weather, must be wholly

valueless. The charge of the county court was founded on and laid down these principles; and if the facts in the case were such, that they were applicable to the parties in this suit, there was no error in their charge.

On recurring to the facts found, it appears, that the meeting house was built by the town of Benson. By the law then in force for the support of the gospel (Acts of 1787) towns were empowered to build meeting houses, or places for the public worship of God, and to supply the pulpit with preaching, either by settling or hiring a minister, and to vote a tax, or taxes, sufficient for that purpose. This law continued in force until the year 1807. Asa Farnham executed to the town a durable lease of a piece of land for a meeting house in January, 1797. The house, when erected, became the property of the town,—that is to say, they held the same in trust for the purposes for which the land was leased and the house erected. They could maintain trespass for any injury to the house, or land, thus leased to them, were authorized to repair and rebuild, if necessary, on the ground thus given, and to lay any tax necessary for that purpose. The persons, to whom they sold the pews, owned the same, had a right to their seats and pews, and a right to occupy them, while the house was used for public worship.

By the statute of 1807 the power of raising taxes was taken away, and the town could not raise money as before; but yet the ownership of the house and the pews remained as before. It became necessary, however, in order to preserve the house as a place of worship, and also to preserve the right of the pew-holders, and to carry into effect the intent expressed in the deed of Farnham, that others should be substituted to the rights which the town had anterior to 1807. Accordingly a voluntary society was formed, using the same form of worship and employing the same minister, who continued to occupy the house as a place of public worship; and in 1814 *The First Congregational Society* became organized and incorporated under a law passed by the legislature that year, and continued to occupy the house until its demolition by the defendant.

At a town meeting, regularly called in January, 1842, the town, by a vote, authorized their selectmen to release to the society all the right and title of the town in the house and lands, leased as abovementioned, and the selectmen accordingly executed a deed of

the same to the society. This proceeding, we think, was authorized and legal; that it became necessary, in order to preserve the rights of all concerned, both the town and the individual pew-holders, to transfer their interest to the voluntary society thus formed ; and that, by that vote and deed, the First Congregational Society succeeded to all the rights, which the town had by the lease from Farnham and by erecting the house. After this, the pew-holders had the same interest in the house as before, and no greater. The society had the same interest and property and right, which the town had; and this enabled them to rebuild, or repair, and consequently to demolish the old house, whenever the society should think proper so to do.

The subordinate right of the plaintiff must yield to this superior right of the society. The jury have found, under the charge of the court, that the house was ruinous and wholly unfit to remain a place of public worship; that it could not be made a convenient and suitable place for worship, by moderate repairs; and that the plaintiff's pews were valueless to him, as pews in a house of public worship. The timber and materials did not belong to him ; and the society, who succeeded to the town, might make use of the same in erecting a new meeting house, as the house belonged to them, to be used for that purpose.

We think, therefore, on a view of the whole case, that by the principles of the common law, by the law applicable to this species of property in England, and as recognised in some of the other States in the Union, the defendant was justified, and that the plaintiff cannot sustain this action ; that it was not in the power of any individual to say, that an old, ruinous, or inconvenient house should remain as a place for public worship, and compel the society to resort to some other place, and abandon the one leased to them by Farnham.

The judgment of the county court is affirmed.