SAMUEL SMALL & others *vs.* ALONZO F. CAHOON & others.

Barnstable.   November 30, 1910. — January 4, 1911.

Present : KNOWLTON, C. J., MORTON, HAMMOND, LORING, & SHELDON, JJ.

*Religious Society.*

A church building in a village in a town was paid for out of funds obtained from the sale of pews, and belonged to the pew holders. It was controlled by the society consisting only of pew owners or persons who rented pews, and none others had the right to vote at meetings of the society. An article of the constitution of the society was as follows: "In all meetings of the society (or pew holders) a notice shall be posted up in the meeting house two weeks before said meeting." A new religious society was organized in an adjoining village in another town by most of the persons who attended church in the church building mentioned above. A meeting of the society controlling the church building was attempted to be called for the purpose of removing the church building to the adjoining village, but the two weeks' notice of the meeting required by the

constitution was not given. At an adjournment of this meeting a vote was passed to remove the church building to the neighboring village. Certain pew holders, who were not present at the meeting or at the adjournment thereof, protested against the attempted action, and brought a suit in equity to restrain the removal of the church building. *Held,* that, even if a vote properly passed at a meeting regularly called to remove the church building to an adjoining village in another town would have been valid against the objection of a minority of the pew holders, which was not decided, such minority could not be bound by the vote passed at a meeting not properly called at which they were not present, and that the plaintiffs were entitled to the injunction prayed for.

BILL IN EQUITY, filed in the Superior Court on April 14, 1910, to restrain the removal of a church building in that part of Harwich called South Harwich to the adjoining village of South Chatham in the town of Chatham.

The bill alleged that the building known as "The Bethel Church" was situated in that part of the town of Harwich called South Harwich and near the town line of Chatham and was built and paid for by subscribers, who in token of their money subscriptions became pew holders and thereby the proprietors and owners of the church building; that the plaintiffs and certain other persons, whose rights the plaintiffs represented, being themselves pew holders and the heirs of pew holders, had proprietary rights in the church building; that the plaintiffs were informed and believed that a certain religious society calling itself "The Bethel Society," composed chiefly, if not wholly, of residents of the nearby village of South Chatham in the town of Chatham, had voted to remove the Bethel Church building to a point about one third of a mile eastward from its present location and had appointed the defendants a building committee of eight to carry the vote into effect, and that the so called Bethel Society had been recently organized for the purpose of removing the Bethel Church building; that the plaintiffs had remonstrated against the carrying into effect of the vote of the so called Bethel Society, but that the defendants proposed to carry out the vote by moving the building; that the removal of the church building was not required by any ground of necessity but purely for the slightly better convenience of a few of the leading spirits of the so called "Bethel Society" who resided near the proposed location of the building; and that the plaintiffs had no adequate remedy at law and were about to suffer irreparable damage to their rights and property and interests.

The bill prayed that the members of the building committee of the "Bethel Society" should be restrained and enjoined from removing or causing to be removed from its present location in South Harwich the building known as the "Bethel Church."

The case was referred to Raymond A. Hopkins, Esquire, as master. He filed a report, in which he found the following facts:

The Bethel Society was organized in the year 1857 by people living in the villages of South Harwich and South Chatham, and was intended to be a free and independent church, having no connection with any denomination. The money was raised by a sale of the pews in the church building, thereafter to be erected, and the pews became the property of the owners, except that the society reserved the right to tax the pews yearly for the support of the meetings. The Bethel Church building was built from funds obtained by the sale of the pews. The pew owners were also called the proprietors. From 1858 to about the year 1875 the meetings were maintained by a tax levied upon the pews in the church building. After the year 1875 that method of raising money was changed and thereafter down to the time of the report the meetings were maintained by a system of voluntary contributions or offerings. Two plaintiffs in this case were at the time of the filing of the bill pew owners by inheritance from original owners of pews. The plaintiffs represented by power of attorney other persons not residents of Harwich who had interests in the pews by inheritance, and the plaintiffs and the persons represented by them were all opposed to the removal of the church building.

After the year 1875, when the meetings were maintained by the system of voluntary contributions, all persons who attended services at the Bethel and who contributed to the support of the meetings became members of the society, so called. At the annual meetings held in the Bethel all persons who voted were pew owners or persons renting pews, according to article 8 of the constitution adopted at the time the church was built. Article 1 of the constitution was as follows: "Article 1. In all meetings of the Society (or pew holders) a notice shall be posted up in the meeting house two weeks before said meeting." There was no organized society other than as shown by the constitution. There was no church organization or parish.

After the year 1875 the annual meetings of the church were held at the Bethel in South Harwich, also in the store of Levi Eldredge in the village of South Chatham, and in Village Hall in South Chatham, and for the last fifteen years the annual meetings had been held in Village Hall, and there had been no attendance from South Harwich.

There were no by-laws or records to show who were members of the Society. Services had been held since 1858 every year down to the date of the report.

The church building at the time of the report was in the town of Harwich within a few hundred feet of the Chatham line. There were no houses in the village of South Harwich east of the church. The proposed location for the church building was about three thousand feet east from the location at the time of the report and would be in the centre of the village of South Chatham.

It was admitted by the defendants that a certain religious society, calling itself the Bethel Society, composed of residents of the village of South Chatham, had recently been organized, and had appointed a building committee of eight, who were the defendants in this case, and that the Bethel Society had been organized for the purpose of removing the Bethel Church building. Certain by-laws have been adopted by the recently organized Bethel Society.

On December 4, 1909, a warrant was issued for a meeting of the members of the Bethel Society in Village Hall in South Chatham, for Monday, December 13, 1909, to act upon certain articles. Article 2 reads as follows : " To see if the Society will vote to authorize a new Society to be formed for the purpose of removing the Bethel Meeting House from its present location to a convenient site in the village of South Chatham." Less than two weeks' notice was given of this meeting. For many years, notwithstanding article 1 of the constitution, which provides for notice posted two weeks previous to the meetings, this article had not been complied with. Annual meetings were held giving less than fourteen days' notice in the years 1863, 1864, 1868, 1869, 1871, 1879, 1882, 1883 and 1890.

At the meeting of December 13 no action was taken, but an adjournment was made until December 23, 1909, and at that

meeting it was voted to remove the Bethel Meeting House from its present location to a convenient site in the village of South Chatham.  No member of the society or pew owners from South Harwich attended this meeting.  The plaintiffs remonstrated against the carrying into effect of the vote of the so called Bethel Society, whereby the building was to be moved.  The number of persons residing in South Harwich who attended services at Bethel Church during the last year was limited to less than four persons, and none of these had been at all regular in their attendance, and no children residing in South Harwich attended the Sunday school.  Most of the persons who attended Bethel Church lived in the village of South Chatham.  The moving of the building would be convenient for the South Chatham people and the attendance probably would be increased by moving the building.  The members of the Sunday school were all children from South Chatham, with the exception of two, who came from the village of West Chatham.  The number of enrolled Sunday school scholars was fifty.  The attendance at the Bethel meetings was from twenty-three to forty when conditions were favorable and from fifteen to twenty when not favorable.  The attendance at the Sunday school was from twenty to forty.

A fire in South Harwich about ten years before had destroyed a number of dwelling houses, which had not been rebuilt.  It would be beneficial and for the convenience of a large portion of the congregation of Bethel Church if the church building was situated near the proposed new location.

There were various amendments to the master's report on findings requested by the parties, which are not important.

The case came on to be heard on a motion for a final decree, upon the pleadings, the master's report and his amendments thereto and all questions of law therein, before *Richardson,* J., who by agreement of the parties reserved and reported the case for determination by this court.

*H. H. Baker & J. H. Paine.* for the plaintiffs, submitted a brief.

*C. Bassett,* for the defendants.

SHELDON, J.  Upon the facts found by the master and the statements made at the argument by the defendant's counsel, it appears that before the year 1875 the title to this church was in

the pew holders. The building seems to have been erected on the land of some third person with his consent. It was paid for out of the funds obtained from the sale of pews. It was the pew holders who held the beneficiary interest in the building and were entitled to its enjoyment. *In re New South Meeting House*, 13 Allen, 497, 508. The constitution under which the original society was organized is to the same effect. It provides for the meetings of " the Society (or pew holders)." It recognizes only pew holders, or persons renting pews. The expenses of the church were to be met by taxes upon the pews. Since 1875, however, the church has been supported by voluntary contributions, and not by such taxes. But we have not before us the terms of the vote by which this change was made; and there is nothing to indicate that the pew holders have abandoned any of their rights of property. On the contrary, these rights were still recognized as they had been before. The right to vote at meetings of the society and thus to control its affairs was still, as before, conceded only to pew owners, or to persons who at the time rented pews. The plaintiffs are pew holders.

A new religious society calling itself the Bethel Society has been organized in the neighboring village of South Chatham, and the purpose of the defendants is to move this building into that village and appropriate it to the use of the new society, thus permanently depriving the plaintiffs of their proprietary rights in the building as it now stands. *Stebbins* v. *Jennings*, 10 Pick. 172. Manifestly this cannot be done without their consent, unless they are concluded by the terms of the vote passed at the meeting of the old society on December 23, 1909. But the meeting at an adjournment of which this vote was passed, was not called as required by the first article of the constitution, the plaintiffs had not seen the notice which was posted in the church in attempted compliance with that article, and one of them had no knowledge at all that the meeting was to be held. None of them was present at that meeting or at the adjournment thereof. Even if a vote properly passed at a duly called meeting to remove the building to an adjoining village in another town and there turn it over to a new society would have been valid and effectual against the objection of persons who, like the plaintiffs, had rights of property in the building, (*Baker* v. *Fales*, 16 Mass. 488,)

they cannot be bound by this vote. *Reformed Methodist Society of Douglas* v. *Draper*, 97 Mass. 349. *Canadian Religious Association* v. *Parmenter*, 180 Mass. 415.

None of the exceptions taken by the defendants to the master's rulings upon the admission or exclusion of evidence has been argued, and we treat them as waived.

The plaintiffs are entitled to a decree against the defendants as prayed for.

*So ordered.*