MASSACHUSETTS BAPTIST MISSIONARY SOCIETY, trustee, *vs.*
BOWDOIN SQUARE BAPTIST SOCIETY & another.

Suffolk.    February 27, 1912. — May 27, 1912.

Present: RUGG, C. J., MORTON, BRALEY, & DECOURCY, JJ.

*Religious Society. Equity Jurisdiction,* To establish rights of pew owner. *Words,*
"Connected with."

Discussion by RUGG, C. J., of the rights of the owners of pews in houses of worship
belonging to religious societies in this Commonwealth.

The owner of sixty-five pews out of a total number of one hundred and seventy-
five in a church building belonging to a religious society incorporated under the
laws of this Commonwealth, who by the by-laws of the society has only one vote
as a member of the corporation, has proprietary rights in the church building
corresponding to the number of his pews.

By R. L. c. 36, § 54, "any religious society connected with a church" incorporated
under the provisions of that chapter may authorize a conveyance of "any real
or personal property belonging to it to such church, and such estate shall there-
after be held by the church subject to the same uses and trusts as when held by
said religious society." Under a vote passed in the manner directed by this
section a Baptist religious society, incorporated in 1841 under a general law,
owning a church building conveyed such building to a Baptist church incor-
porated in 1911 under R. L. c. 36. This church had been organized as an
unincorporated ecclesiastical body in 1887 and for more than twenty years had
worshipped in the church building belonging to the religious society and con-
tinued to worship there after its incorporation and the conveyance of the
building to it. By the by-laws of the religious society one vote was given to
each pew owner. In a suit in equity by the owner of sixty-five pews, who had
voted against the conveyance, to enjoin the recording of the deed and compel a
reconveyance, and also to establish the plaintiff's property rights, it was *held,*
that the religious society, of which the plaintiff was a member, was "connected
with" the church to which the conveyance was made within the meaning of the
statute, that under the conveyance the church held the estate "subject to the
same uses and trusts as when held by said religious society," and that the plain-
tiff's beneficial property rights in the building as a pew owner had not been ex-
tinguished; that the plaintiff's right to vote, which he had lost by the conveyance,
was not a property right incidental to pew ownership but had existed under the
by-laws of the society and had been terminated by the operation of the statute,
to which his membership was subject; therefore, that the only relief to which the
plaintiff was entitled was a decree establishing his property rights as a pew owner
in the church building transferred to the incorporated church.

BILL IN EQUITY, filed in the Supreme Judicial Court on Decem-
ber 19, 1911, by the Massachusetts Baptist Missionary Society,
trustee under the will of Asa Wilbur, as the holder of sixty-five

out of one hundred and seventy-five pews in the church of the Bowdoin Square Baptist Society, to enjoin the recording of a deed dated June 23, 1911, from that society to the Tabernacle Baptist Church and for a reconveyance, and also for a determination of the rights of the plaintiff in the property of the Bowdoin Square Baptist Society under the will of Asa Wilbur.

· The case came on to be heard before *DeCourcy*, J., who reserved it upon the pleadings and an agreed statement of facts for determination by the full court.

The plaintiff was incorporated in 1808 under the name the Baptist Missionary Society in Massachusetts; in 1835 its name was changed to the Massachusetts Baptist Convention and in 1904 its name again was changed to the Massachusetts Baptist Missionary Society, all by special acts of the Legislature. Asa Wilbur died in 1878. His will contained the following paragraphs:

"I give and bequeath unto the Massachusetts Baptist Convention a legal corporation according to the Statutes of this Commonwealth, all my pews and interest in the House of Worship and all appurtenances thereto belonging owned by the Bowdoin Baptist Society in trust however as hereafter shown. And I hereby appoint the said Massachusetts Baptist Convention my Trustee for the purposes herein described namely:

"The Bowdoin Square Baptist Church and Society now worshipping in said house to have the free use and control of the said pews and property as they now have so long as the said church shall continue a religious ecclesiastical body holding the doctrines and sentiments in its articles of faith and worship in said house. But if said church should be disbanded or for any cause nonexistent or be merged into or be united with another church to worship in another place or the said house of worship be sold, then the said trustee shall hold the funds received for said trust property for the following purposes, namely:

"First, to assist in building Baptist meeting houses.

"Second, to assist in paying the debts contracted in building Baptist meeting houses prior to the probate of this will and still existing when the house is already built. . . ."

Asa Wilbur at the time of his death was the owner of sixty-four pews in the meeting house. The plaintiff thereafter acquired one

other pew under the will of one Storey. The other necessary facts are stated in the opinion.

The case was submitted on briefs.

*E. B. Gibbs,* for the plaintiff.

*O. E. Dunham,* for the defendants.

RUGG, C. J. The Bowdoin Square Baptist Society was incorporated as a religious society in 1841 under general law. It acquired title to land and a church building. The deed to it was absolute in form without statement of any trust. The estate appears to have been paid for by donations and the sale of pews, and in part by a mortgage upon it. In 1840 the Bowdoin Square Baptist Church was organized as an ecclesiastical body, and continued to occupy the church owned by the society until 1885. Soon after this time it passed out of existence. In 1887 the Tabernacle Baptist Church was organized, and since then it has occupied the church building of the society. It was incorporated in 1911 under R. L. c. 36, §§ 47–54. The plaintiff is the owner of sixty-five pews out of a total number of one hundred and seventy-five. Under the by-laws of the society, each pew owner was deemed a proprietor in the corporation, but was not entitled to more than one vote. In June, 1911, a legal meeting of the society was held, at which the plaintiff was represented, and at which it was voted by fifteen affirmative against two negative votes to sell and convey the society's real estate to the Tabernacle Baptist Church, then recently incorporated. At this meeting seventeen pew holders were present representing eighty-one pews, of which sixty-five belonged to the plaintiff. It voted against the transfer, and protested against the action taken. It brings this bill to set aside the conveyance executed in accordance with the vote.

The nature of the right of a pew holder, as between himself and the corporation owning the building, under our system of church ownership, has been discussed in several cases and is well settled. The right to a pew, though formerly real estate (St. 1795, c. 53, § 1) is now personal property (St. 1855, c. 122, R. L. c. 36, § 38), and has been such in Boston for more than a century. (St. 1798, c. 42.) "It is property of a peculiar nature, derivative and dependent. It is an exclusive right to occupy a particular portion of a house of public worship, under certain restrictions. The owner of a pew is not a tenant in common of the estate on

which the house stands; the legal estate is in the corporation, if the religious society be one, or in the trustees, if the property be vested in them to the use of the congregation, forming a religious society for public worship.   Whoever else, therefore, may be, or claim to be, *cestuis que trust*, the holders of pews are clearly entitled to stand in that relation."   *Attorney General* v. *Federal Street Meeting House,* 3 Gray, 1, 45, 47.   The building may be abandoned, repaired, altered, or taken down by the legal owner, to whose determination in this respect the pew owner must submit. If, however, the building is taken down, when fit for occupancy, or the pew destroyed in the process of alteration or repair, and this merely on the ground of expediency, there must be indemnity paid to the pew owner.   If the building is abandoned, not wantonly or unreasonably or with intent to injure the pew holders, or if it falls into decay and becomes unfit for occupancy, the pew owner is without remedy.   *Fassett* v. *First Parish in Boylston,* 19 Pick. 361. *Aylward* v. *O'Brien,* 160 Mass. 118, 127.   *Daniel* v. *Wood,* 1 Pick. 102.   *Gay* v. *Baker,* 17 Mass. 435.   *In re New South Meeting-House,* 13 Allen, 497, 517.   *Howard* v. *First Parish in North Bridgewater,* 7 Pick. 138.   *Gorton* v. *Hadsell,* 9 Cush. 508.   *Wentworth* v. *First Parish in Canton,* 3 Pick. 344.   R. L. c. 36, §§ 33, 34.   But although the rights of the pew holder are thus qualified, subsidiary and dependent, they are by no means shadowy or insubstantial.   "The pew owner cannot be despoiled of his property.   In some respects his rights are superior to those of the parish."   *Kimball* v. *Second Congregational Parish in Rowley,* 24 Pick. 347, 349.   *Revere* v. *Gannett,* 1 Pick. 169.   His privileges cannot be wantonly destroyed nor his title extinguished simply from motives of utility.   The position of pew owner was a dual one in the society now under consideration. By virtue of ownership of a pew, he was a member of the corporation, and entitled to vote, his right being restricted to a single vote, no matter how many pews he might own.   In this respect he is bound by the rule of the requisite majority.   But he was also the owner of the property of the pew.   In this respect his right depended upon the number of pews owned, and he might exercise all the proprietary rights attaching to such ownership.   This kind of ownership, to the extent that it is property, is entitled to all the protection which more tangible estates are given under the law.

It is not necessary to inquire what would be the rights of the plaintiff in the event of a sale of the church building and the land connected with it for commercial purposes, nor to examine into the question whether the society had or the Tabernacle Baptist Church has a right to make such a sale without devoting the proceeds to the erection of a new house of worship devoted to like purposes as the present one, nor to determine whether these matters are not covered by previous decisions. It has been held that the majority of a corporation cannot sell church property and divide it among the members against the protest of a minority. The power of the court to authorize a sale for such a purpose is doubtful, and certainly would not be exercised except in an extraordinary case. *In re New South Meeting House in Boston,* 13 Allen, 497. *Old South Society* v. *Crocker,* 119 Mass. 1, 27. *Warner* v. *Bowdoin Square Baptist Society,* 148 Mass. 400, 405. *Canadian Religious Association* v. *Parmenter,* 180 Mass. 415, 423. These questions are not presented in the present case.

The society by its establishment and acceptance of the real estate bought and built upon by contributions for the purpose of enabling it and its successors to hold it "as a church in fee simple forever" (to quote from the agreement of subscribers) was charged with the duty of "maintaining public worship and religious instruction." *Parker* v. *May,* 5 Cush. 336, 345. The act of the society in voting to sell and in conveying the building to the Tabernacle Baptist Church was authorized by law in performance of this duty. By R. L. c. 36, § 54, "Any religious society connected with a church so incorporated may, at any meeting called for the purpose, by a three-fourths vote, authorize one or more persons in its name and behalf to convey any real or personal estate belonging to it to such church, and such estate shall thereafter be held by the church subject to the same uses and trusts as when held by said religious society." We construe the words "connected with" to mean belonging to the same denomination or faith and professing the same doctrines or creed and having such relations with the church occupying the edifice belonging to it as existed in similar cases according to the usages and customs of the denomination to which they belonged. In the present case the church and society both belonged to the Baptist denomination. Of the one hundred and twenty members composing the Tabernacle

Baptist Church when it was organized seventy-two belonged to the original Bowdoin Square Baptist Church, and the Tabernacle Church since its organization more than twenty years ago has worshipped in the meeting-house belonging to the society, and is regularly worshipping there now. It seems plain that the society is connected with the Tabernacle Church within the meaning of the statute, and hence was empowered by this statute "to convey any real or personal estate belonging to it to" the church. *Baker* v. *Fales*, 16 Mass. 487, 504. *Stebbins* v. *Jennings*, 10 Pick. 172. *Weld* v. *May*, 9 Cush. 181. R. L. c. 36, § 54, first enacted by St. 1887, c. 404, § 8, was passed under the power reserved to the Legislature of altering the corporate powers of a religious corporation by St. 1840, c. 62, § 2, under which the society was incorporated. The authority to make such conveyance, however, was limited in R. L. c. 36, § 54, by the requirement that the "estate shall thereafter be held by the church subject to the same uses and trusts as when held by said religious society." Such an authority to convey contemplates no radical change in the use and management of the property, which has been dedicated to religious uses. It enables those interested to assimilate the temporal and religious concerns of the body into a single legal entity which comprises those who are members of the church. It affords an opportunity to embrace a form of corporate existence, rendering impossible the friction which, according to experience, sometimes arose between those composing the incorporated religious society vested with the legal title to property and those individuals associated voluntarily as a church, celebrating Christian ordinances, and cherishing a particular form of ecclesiastical polity and religious creed, each connected with and dependent upon the other. But the statute does not purport to authorize the wiping out of property rights beneficiary in character. These are expressly preserved and are as binding upon the new corporation as upon the old. The duty of maintaining public worship and religious instruction in the building rests as heavily upon the present owner as it did upon its predecessor in title. The interest of the pew holders is of a peculiar kind, and partakes of the nature of both proprietary and beneficiary rights. As has been pointed out, they have a qualified usufructory right to occupy under certain restrictions, and the religious corporation as to the maintenance of these beneficial

rights occupies a position analogous to that of trustee. *Sohier* v. *Trinity Church,* 109 Mass. 1, 20. *Attorney General* v. *Proprietors Federal Street Meeting House,* 3 Gray, 1, 45.

The church building has not been diverted from the uses to which it was dedicated. It is still a place for worship for Christians of the Baptist persuasion. The society has not undertaken to do more than divest itself of the legal title and put it in the hands of another corporation with like powers. But it has not put an end to the implied trusts for which the building was established. It has turned the real estate over to another corporation as authorized by law. These circumstances do not affect the rights of the pew holder. There is nothing in the record to indicate that the easement of the plaintiff in the use of its pews has been interrupted or in any way interfered with. The building is still devoted to the same religious uses as before. The right of the pew holder was at the first and since has been to occupy his pew at times of worship. That right remains. The beneficiary property rights of the plaintiff in the building and its privileges in the enjoyment of them have not been extinguished. *Small* v. *Cahoon,* 207 Mass. 359, 364. *Kellogg* v. *Dickinson,* 18 Vt. 266, 276. The only substantial change wrought is that ownership of pews no longer constitutes membership in the corporation owning the building with a right to vote. That circumstance is no inherent characteristic of pew ownership. It arose out of a by-law of the society, and ceased with the proprietorship of the society.

It follows, notwithstanding certain allegations of the bill and admissions in the answers as to conclusions of law, that upon these facts the rights of the plaintiff as owner of the pews under trusts established by the will of Asa Wilbur have not been affected by the transfer of title from the society to the Tabernacle Baptist Church. It left undisturbed the proprietary rights of pew owners. So far as such ownership gave the pew owners a voice in the corporate management of the owner of the building, that has come to an end because it was subject to the regulations imposed by the by-law of the society and the supervisory power of the Legislature. But participation in such management is not a property right of the same nature as that of ownership of the pew. They are separable in their essence, flow from different sources, and have no necessary connection with each other. As member of an artificial

organization created under a statute and governed in accordance with by-laws, the pew holder is subject to the rules by which he obtained such membership. As the owner of property, he is protected by the Constitution. Hence the plaintiff shows ground for equitable relief. A decree may be entered establishing its rights in accordance with this opinion.

*So ordered.*