GEORGE A. CRAWFORD & others, trustees, *vs.* LEOPOLD A. NIES & others, trustees.

Suffolk.    December 8, 1914. — December 31, 1914.

Present: RUGG, C. J., BRALEY, SHELDON, DE COURCY, & CROSBY, JJ.

*Equity Pleading and Practice,* Multifariousness.  *Charity.  Trust,* Charitable. *Religious Society.  Constitutional Law.  Bromfield Street Methodist Episcopal Church in Boston.  Equity Jurisdiction,* To determine validity of election of trustees of church.

In a suit in equity to determine what persons as trustees are entitled to the possession of certain funds to be held upon a charitable trust, where all the persons claiming the right to act as such trustees have been joined as parties and where the defendants have proceeded without objection to a general hearing upon the merits before a master, whose report covers the whole case as set forth in the bill, it is too late for the defendants to raise the objection that the bill is multifarious.

A deed of land to trustees to hold it forever in trust and to erect thereon a house of worship "for the use of the members of the Methodist Episcopal Church in the United States of America according to the rules and discipline which from time to time may be agreed upon and adopted" is a public charitable trust in perpetuity.

The power of the Legislature to terminate a public charitable trust for the support of a well recognized sect of the Christian religion is open to grave doubt, but there is no doubt of the power of the Legislature to authorize the trustees under such a trust to sell a particular piece of land freed from trusts for the maintenance of a building for religious worship and to hold the proceeds of the sale subject to the terms of the trust.

*Whether* St. 1892, c. 103, authorizing the trustees of the Bromfield Street Methodist Episcopal Church in Boston to sell and convey the real estate of that church, is susceptible of a construction that would permit a termination by due formalities of the trust on which the property was held before such sale, and *whether,* if the true construction of the statute would permit such a course, the statute in that respect would be a constitutional exercise of legislative power, here were mentioned as questions that had not been presented to the court.

The trustees of the Bromfield Street Methodist Episcopal Church in Boston, who were appointed in 1913 by a decree of the Supreme Judicial Court to hold the property conveyed by the deed of one Jackson to Binney and others in 1806, with the authority to sell the real estate of the church given to such trustees by St. 1892, c. 103, and who sold such real estate for $400,000, are entitled to hold such proceeds as a trust fund which they are bound to administer according to the trusts established by such deed of Jackson.

Where property is held by trustees "for the use of the members of the Methodist Episcopal Church in the United States of America according to the rules and

discipline which from time to time may be agreed upon and adopted," and where the discipline of the church provides that questions relating to the election of such trustees shall be determined within the church by appeal to the appropriate conference, resort cannot be had to the courts to determine by a suit in equity or otherwise the validity of the election of such trustees until the usual methods of relief within the organization have been tried and found wanting.

RUGG, C. J.   This is a suit in equity by four out of nine persons appointed trustees by a decree of the Supreme Judicial Court of Suffolk County and also by one of the trustees in behalf of himself and other members of the Methodist Religious Society in Boston, more commonly known as the Bromfield Street Church, against the Methodist Episcopal bishop for this district and the remaining five of the nine persons appointed such trustees, who are averred to hold certain trust funds unlawfully, to determine what persons as trustees have the right to the possession of those funds.   The case was reserved by a single justice of this court for our determination.

The history of the trust is this:  In 1806 real estate on Bromfield Street in Boston was conveyed by William H. Jackson to Amos Binney and eight other persons and their successors, to hold "for ever in trust that they shall erect and build or cause to be erected and built thereon a house or place of worship for the use of the members of the Methodist Episcopal Church in the United States of America according to the rules and discipline which from time to time may be agreed upon and adopted . . . and in future trust and confidence that they shall at all times forever hereafter permit such Ministers and preachers belonging to the said Church as shall from time to time be duly authorized . . . and none others to preach . . . therein . . . in further trust and confidence that as often as any one or more of the Trustees . . . shall die or cease to be a member . . . of said church . . . then . . . it shall be the duty of the stationed Minister or preacher authorized as aforesaid who shall have the pastoral charge of the members . . . to call a meeting of the remaining trustees as soon as conveniently may be and when so met the said Minister or preacher shall proceed to nominate" a person or persons to fill the vacancy or vacancies, who shall be voted for by the remaining trustees so that the number shall be kept at nine.

A church edifice was erected upon the lot and the ecclesiastical body which worshipped there had a large membership and was

prosperous for a long time. In recent years the neighborhood has ceased to be residential and the membership has become small. In 1890 a petition was brought in the Supreme Judicial Court for Suffolk County setting forth that the original trustees under the Jackson deed had died and no successors had been appointed in accordance with the terms of that deed, and referring to St. 1808, c. 70, and St. 1828, c. 144, and praying for the appointment of such trustees. The prayer of the petition was granted and trustees were appointed. St. 1892, c. 103, authorized nine persons, who were the trustees named in the court decree, to sell the church and land free from the trusts in the deed of William H. Jackson to Amos Binney and others dated March 24, 1806, and "the net proceeds of sale to be held and disposed of by said trustees for the use of the members of the Methodist Episcopal Church in the United States of America, according to the rules and discipline which from time to time may have been or may be agreed upon and adopted at the general conferences of said church in the United States of America, and the final application of said proceeds, in accordance with said rules and discipline, to be a full discharge of the said trustees, the trusts of said deed being thereupon terminated."

Upon a petition presented in 1913, the court again appointed trustees under the Jackson deed, those appointed in 1892 all having died or resigned, and the real estate was sold for $400,000 in February, 1913, deeds being executed both by the trustees appointed by the court and by the same persons as trustees of the Bromfield Street Church elected under the ecclesiastical polity of the Methodist Episcopal Church. The plaintiffs are four of these trustees. It was provided expressly in this decree that the trustees so appointed were "to hold, manage or convey said estate upon the trusts and for the purposes set forth in said deed" from Jackson to Binney and "as authorized in Chapter 103 of the act of the year 1892."

The defendants have argued that the bill is multifarious. But it is not so objectionable in this particular that the matter requires consideration now after the defendants have proceeded without objection to a general hearing upon the merits before a master, whose report covers the case at large. See *Bauer* v. *International Waste Co.* 201 Mass. 197. All the trustees, including those elected

by the church and those appointed by the court, have been joined so that in this respect the proper parties are before the court.

It appears from the allegations of the bill and the admissions of the answer that, although the sale of the Bromfield Street real estate was conducted by the persons who were appointed trustees by the court decree of 1913, it was assumed by a majority of them that they received the proceeds in their capacity as trustees elected by the church as an ecclesiastical organization, and that hence the persons elected each year as trustees by that organization are entitled to the custody of the fund and are to manage it, not according to the trusts of the Jackson deed of 1806. It does not distinctly appear from the record upon what terms and trusts, if any, these church trustees claim to hold and manage the fund. It is stated in their brief, however, that "the turning over of the proceeds of sale to the trustees of the local society was a 'final application of said proceeds in accordance with said rules and discipline,' which terminated the trust created by the old deed. Chapter 103 of the Acts of 1892. The proceeds are now held by the defendant trustees as funds of the church, to be disposed of according to its discipline." This is all that is said about that subject in the brief for the defendants. This hardly goes to the root of the matter. The master makes no specific findings upon this branch of the case. Apparently the hearing before him was not directed to the point, although he does make findings as to the authority of trustees elected by the church to hold property.

The Jackson deed of 1806 created a public charitable trust in perpetuity. The general support of a well recognized sect of the Christian religion is a trust of that character. *Chase* v. *Dickey,* 212 Mass. 555, 566, and cases there collected. That instrument provided in plain terms a method for perpetuating the board of trustees to the full number of nine. It vested the legal title of the real estate in the trustees for the use of the ecclesiastical body which might worship in the church edifice erected on the land. *Worcester City Missionary Society* v. *Memorial Church,* 186 Mass. 531. Its scheme was that the trustees should own and hold the title to the church property for the benefit of those who might worship there in a way somewhat analogous to the ownership of the building by the society in the Congregational and Baptist forms of parish administration, and its occupancy by the body

known as the church. See *Massachusetts Baptist Missionary Society* v. *Bowdoin Square Baptist Society*, 212 Mass. 198.

The record does not disclose any legal transfer of the corpus of this trust to any others than the successors of the original trustees of the Jackson deed. On the contrary, the appointment by the court in 1890 and again in 1913 of trustees to execute the terms of the trust created by the Jackson deed shows that it has been kept alive and has been treated as vitally existent. It is not necessary to discuss the power of the Legislature to terminate such a trust. It is enough to say that its constitutional power to do so is open to such grave doubt, *Cary Library* v. *Bliss*, 151 Mass. 364, that it cannot be presumed that it would be undertaken except by a statute phrased in unequivocal words. The power of the Legislature to authorize the sale of a particular piece of land freed from trusts for the maintenance of a building for religious worship created by its original deed of conveyance to religious uses, may not be doubted. *Old South Society* v. *Crocker*, 119 Mass. 1, 26. But that is a very different matter from terminating the trust. The resort twice to the court for the purpose of appointing trustees under the Jackson deed, the last time being on the eve of the sale of the property, demonstrates that up to that time there had been no attempt to end the trust. It does not appear that the trustees last appointed, all of whom are parties hereto, have undertaken with a definite purpose to that end to act under the final clause of St. 1892, c. 103, or place any interpretation upon that portion of it which speaks of a "final application of said proceeds," or to do the thing which may be thought to terminate "the trusts of said deed." It perhaps may be inferred that they or a majority of them have assumed that the church trustees somehow have become vested with power over this fund. If the trustees appointed by the court in 1913 have taken any steps looking toward a termination of the Jackson trust and turning the funds over to the church trustees, the record does not disclose the facts. The bald assumption that trustees annually elected by the church and not at all in accordance with the terms of the Jackson deed of trust have supplanted the trustees appointed by the court expressly to execute the trusts of the Jackson deed cannot be supported by simple reference to St. 1892, c. 103. See *Peabody* v. *Eastern Methodist Society in Lynn*, 5 Allen, 540;

*Westminster Presbyterian Church* v. *Presbytery of New York*, 211 N. Y. 214. Whether that statute is susceptible of a construction which will permit a termination of the trust after due formalities had to that end, and whether, if its true construction permits such course, then it would be a constitutional exercise of legislative power, are questions of vital importance to be determined before it can be said that the Jackson trust has been ended. These questions have not been argued. It is possible that there may be facts not fully before us which may have a bearing upon this issue. We prefer not to pass upon these questions until a record is prepared with a purpose to present them and until they have been argued. It is enough to say that upon the record as it now stands the trustees appointed by the court decree of 1913 are entitled to the corpus of the trust fund and they are bound to administer it according to the trusts established by the Jackson deed.

The plaintiffs complain that the transfer of one hundred and ninety-eight members of the Eighth Methodist Religious Society to the Bromfield Street Church was illegal. But the finding of the master is explicit to the effect that under the discipline of the Methodist Episcopal Church it was the absolute right of those persons thus to be transferred. As the evidence upon which this finding was founded is not reported, the finding must be accepted as a fact. Subsequently the remaining members of the Eighth Society transferred their membership to the Bromfield Street Church. This, too, is found by the master to have been done regularly according to the discipline of the church and for the same reason cannot be disturbed. The same is to be said respecting the order of the bishop consolidating the two societies and the effect of such consolidation upon the membership of the quarterly conference.

The request for a ruling that the election of the board of trustees of the church was irregular could not have been granted. Whether it was irregular or not, the discipline of the church provided that that question should be determined within the church by appeal to the appropriate conference. Resort cannot be had to the courts to determine the legality of such a matter until the usual channels of relief within the organization have been tried and found wanting. *Hickey* v. *Baine*, 195 Mass. 446. *Correia* v. *Supreme Lodge of Portuguese Fraternity*, 218 Mass. 305.

The other matters of which the plaintiffs complain relate to findings of fact as to which the master's report must be accepted as final for the reason already stated.

A decree is to be entered declaring that the trustees appointed by the court decree of 1913 are entitled to the proceeds of the sale of the Bromfield Street real estate and are to hold them in accordance with the trusts of the Jackson deed of 1806.

*Ordered accordingly.*

*A. G. Sleeper,* for the plaintiffs.
*H. N. Shepard,* for the defendants.