JUDGB BULLITT
delivered the opinion oe the court:
McLaughlin, a clerk of Tilford & Barclay, private bankers, converted to his own use $1,500 of their money, which he charged upon their books to Marshall, a depositor. Afterward, to avoid detection by his employers, he stated the facts and ,his motive to Marshall, and solicited a loan of that amount of money, stating that his employers would overhaul their books in a few days, and that, if he could not effect the loan, he would be detected and ruined. Marshall refusing to lend the money, McLaughlin finally suggested that he could probably get the note of the appellees for the amount, and asked Marshall if he would advance the money upon it, which Marshall promised to do. McLaughlin then applied to the appel-lees, and obtained their note payable to Marshall, five days after date, for $1,500. It does not appear what statements McLaughlin made to the appellees, nor whether they had knowledge of his object in obtaining the note; but it seems clear, from the evidence, that they executed it for his accommodation and to enable him to obtain its value from Marshall. Marshall advanced the money upon it, and afterward called on Tilford & Barclay “to receive the money upon it,” and stated to them the facts before mentioned. Barclay said he could not advance the' money on the note, assigning no reason therefor, but told Marshall that his brother, the appellant, would buy it, and that any arrangement that Marshall and the appellant would make would be perfectly satisfactory, and that Marshall should not have any trouble about it. Marshall sold the note to the appellant for $1,470, and assigned it without recourse.
*376 ■ This is an action upon said note. The appellee, Breckin-ridge', the principal in the note, answered, in substance, that McLaughlin had embezzled the funds of Tilford & Barclay, and been detected by them; that they gave him time to return the money, promising to conceal the embezzlement if he should do so, and threatening, if he should fail to do so, to prosecute him for his embezzlement; that he, with their knowledge, informed Marshall of said embezzlement, and that Marshall advanced the money on the note upon a secret promise of indemnity by Tilford & Barclay; that they promised the appellant to purchase the note; that they are, and all the time have been, the real owners of it; and that the advancement of the money by Marshall, and his sale of the note to appellant, were mere devices to conceal the fraudulent combination between Tilford & Barclay, Marshall and McLaughlin, for the procurement of the note of the appellees.
Barclay appeals from a judgment dismissing his petition.
It is clear, that the statements of the answer, if sustained by proof, constitute a valid defense; even if),McLaughlin had not committed a felony. But there is no proof of the alleged fraudulent combination between Tilford & Barclay, Marshall and McLaughlin, to obtain the note. It does not appear that Tilford & Barclay had any knowledge or suspicion of the defalcation of McLaughlin, until informed of it by Marshall, after he had advanced the money upon the note. Nor does it appear that Marshall had any. motive to defraud the appel-lees, because, though he had' been charged on Tilford & Barclay’s books with the $1,500 abstracted by McLaughlin, the charge was nugatory, and Marshall’s claim on Tilford & Barclay, for the amount of his deposits, was as perfect as if it had not been made.
It may, perhaps, be inferred, from the evidence, that Marshall promised McLaughlin not to disclose his defalcation, and that he advanced the money on the note to enable McLaughlin to avoid detection. But, as he made no fraudulent representations to the appellees, and had no knowledge of such representations having been made by McLaughlin, and it does not appear that such representations were made, the appellees *377 have no right to complain of him for advancing the money on the note, which they executed for the purpose of enabling McLaughlin to procure its value from Marshall, and they certainly were liable to Marshall, unless the abstraction of the money by McLaughlin was a felony.
Assuming that the appellees were liable to Marshall, the facts, that Tilford & Barclay, upon this disclosure concerning McLaughlin, determined to save Marshall harmless, and that they, for that purpose, induced the appellant to buy the note, agreeing to indemnify him, cannot relieve the appellees from liability.
But, if McLaughlin had committed a felony, we incline to the opinion that the appellees did not become liable to Marshall, who probably advanced the money to enable McLaughlin to conceal his crime and to stifle a prosecution against him; and it is clear that the appellant occupies no better attitude than his assignor, Marshall.
The question, then, is, whether or not McLaughlin had committed a felony.
Whether the money was intercepted by him after being deposited, and before reaching the vault or drawer of his employers, or was taken therefrom, or was placed in his hands by his employers, does not appear. If he took it from their vault or drawer he was guilty of larceny by the common law. But we cannot assume that he took it from the vault or drawer, because the answer charges that he embezzled it. Moreover, if his interception of money, deposited, before it reached the vault or drawer, or his use of money placed in his hands by his employers, was not a felony, it must be presumed that he got it in one of those ways, rather than that he committed a felony by taking it from the vault or drawer. Assuming that he intercepted money deposited before it reached the vault or drawer, or used money placed in his hands by his employers, the question is, was he guilty of the crime of embezzlement?
Chapter 28, article 12, of the Revised Statutes, contains the following provisions:
“§ 1. If any director, or officer, or servant, of any incorpo *378 rated bank, or any officer of public trust in this State, or any officer, agent, clerk, or servant of any incorporated company, embezzle or fraudulently convert to his own. use, bullion, money, bank notes, or other security for money, or evidences of debt, or claim, or any effects or property of another person which shall have come to his possession, or been placed under his care or management as such officer, he shall be confined in the penitentiary not less than five nor more than ten years.”
“§.2. If any carrier, porter, or other person, to whom money or other property or thing, which may be the subject of larceny, may be delivered, to be carried for hire, or any other person who may be intrusted with such property, embezzle or fraudulently convert to his own use, or secrete with intent to do so, any such property, either in mass or otherwise, before delivery thereof to the person or at the place to whom the same were to be delivered, he shall be confined in the penitentiary not less than one nor more than five years.”
It is clear that the 1st section has no application to this case, as McLaughlin was not an officer of a corporation, nor of a public trust. We quote it only to show the difference between its provisions and those of section 2, which is relied on to show that McLaughlin committed a felony.
Section 2 is substantially, and, as to the question under consideration, literally the same as a statute of Massachusetts, under which a keeper of a boarding-house was indicted for felony, and the proof was that a person handed him money, saying, “keep this till to-morrow morning for me,” and that, on the following morning, the defendant denied ever having-received the money, and refused to give it up, and fraudulently converted it to his own use. The court said: “This being a penal statute must be construed strictly. Although in the more natural grammatical construction, the words, ‘such property,’ in the clause relating to ‘any other person who shall be intrusted with such property.’ refer only to the words ‘money, goods, or other property which may be the subject of larceny,’ yet the words at the end of the section, ‘before delivery of such money, goods or property at the place at which, orto the person to whom, they were to be delivered,’ limit the words *379 ‘such property’ still further, and, taken in connection with the words ‘carrier or other person,’ at the beginning of the section, confine its application to the embezzlement of property received by the defendant to be carried and delivered to another person.” (Commonwealth vs. Williams, 3 Gray, 461.)
In our opinion, the statute of this State must receive the same construction, although it is declared that “there shall be no distinction in the construction of statutes between criminal and civil or penal enactments. All statutes shall be construed with a view to carry out the intention of the Legislature.” (Rev. Statutes, chap. 21, sec. 15.)
Why the Legislature placed agents of corporations and agents of individuals upon different footings in this respect, we need not inquire. That they intended to do so is evident.
Under section 1, the agent of a corporation, who fraudulently converts to his own use money “placed under his care or management as such officer,” is guilty of a felony, no matter for what purpose it may have been placed under his care. That the Legislature did not intend to make the agent of an individual guilty of a felony under all such circumstances, is evident from the difference in phraseology between the two sections. Under section 2, the guilt consists in fraudulently converting the money, &c., “before delivery thereof at the place or to the person to whom the same were to be delivered;” and it necessarily follows that it must have been intrusted to him for delivery at some place or to some person.
In legal contemplation, the deposit .of money with the clerk of a banking house is a delivery of it to his employers,, who at once become liable therefor to the depositor. 'Whether or not the clerk actually delivers it to his employers is immaterial to the depositor. He has no interest whatever in the disposition which the clerk may make of it', as, when deposited with the clerk, it is the money of his employers. It certainly cannot be said, with truth, that the depositor intrusts the money to ihe clerk for deliveiy to his employers.'
if it should be said, that money thus deposited is intrusted with the clerk by his employers for delivery to- themselves, the answer is, that, as was held in the Commonwealth vs. Williams, *380 the statute does not apply where money is intrusted by one person to another for safe-keeping and return to the owner.
Moreover, according to the usual course of business, the clerk of a banking house is not necessarily bound to make actual delivery to his employers of money deposited; nor is he ordinarily bound to deliver to any particular person money placed in his hands by his employers. He may use the money received from either-source in paying checks, or buying gold or uncurrent funds, and the conversion of such money would not be a felony. It would, perhaps, be as reasonable to say that the statute applies to a case in which money is intrusted to an agent, not for delivery at any place, nor to any person, nor to be returned to the employer, but to be used by the agent, according to his discretion, in purchasing stock for his employer, as to say that it applies to this case.
In our opinion, the ckcuit judge erred in holding that McLaughlin had committed a felony, and in the judgment based upon that conclusion.
The judgment is reversed, and the cause remanded with directions to render a judgment against the appellees for the debt and interest.