## ATTORNEY GENERAL *vs.* JOHN N. BARBOUR.

Middlesex.  January 11, 1877.  COLT & AMES, JJ., absent.
January 19. — 22, 1877.  MORTON & ENDICOTT, JJ., absent.

The time, limited by the Gen. Sts. c. 113, §§ 8, 10, for appealing from decrees of a
single justice in equity, cannot be extended by consent of parties, or by the jus-
tice whose decree is appealed from.

This court, under its general equity jurisdiction, may, for cause, remove or appoint
trustees under wills or other written instruments.

A testator by his will named three executors, and devised and bequeathed the resi-
due of his estate to them, " and the survivors or survivor of them, their successors
in said trust, their heirs and assigns forever," in trust to constitute a perpetual
fund, to be held and invested by the trustees, with power to sell and reinvest, and
the net income thereof to be managed and dispensed for certain charitable purposes
by a corporation to be established by the Legislature, and to be composed of said
trustees and their successors and such persons as they should associate with them-
selves in the act of incorporation, or as should afterwards be elected out of con-
tributors to the fund; and provided that, in case of a vacancy in the board of
trustees, the place should be filled by election by the corporation.  Two of the
persons named in the will resigned, before an act of incorporation had been ob-
tained, leaving the defendant sole executor and sole trustee, and his fitness was in
controversy.  *Held,* that the permanent trust for the benefit of the charity was a
distinct trust, though at first vested in the same persons who were named as ex-
ecutors; that the intention of the testator was apparent that the board should
constantly consist of three trustees; and that the words " the survivors and sur-
vivor of them " did not restrict the power of the court to appoint new trustees in
accordance with that intention.

INFORMATION IN EQUITY, filed August 10, 1876, by the at-
torney general, at the relation of Isaac Adams, alleging that
Seth Adams, of Newton, in the county of Middlesex, brother of
the relator, died on December 7, 1873, leaving a will, which was
admitted to probate on January 13, 1874, a copy of which was
annexed to the information, and the residuary clause of which
was as follows :

" I give, devise and bequeath to my said executors, and the
survivors or survivor of them, their successors in said trust, their
heirs and assigns, forever, all the rest and residue of my estate
and property, whether real, personal or mixed, and wherever
or however situated, of which I shall die seised or possessed,
including any or all of the foregoing bequests which may lapse,
if any, in trust, for the following uses and purposes, viz. : the

same is to constitute a perpetual fund, the net income of which is to be managed and dispensed by a corporation to be established for the benefit of such indigent, debilitated, nervous people, who are not insane, inhabitants of the Commonwealth of Massachusetts, as may be in need of the benefit of a curative institution, in the following manner, viz. : my said executors and trustees, with such others as they may associate with them, shall, as soon after my decease as practicable, obtain from the government of said Commonwealth authority to organize and act as a corporation, under the title of ' The Adams Nervine Asylum,' for the legitimate purposes of this bequest.

" Said curative institution shall be established in the Roxbury district, or in one of the towns of West Roxbury, Brookline, Brighton, Newton or Watertown, in said Commonwealth, and shall be distant not more than fifteen miles from said city of Boston, and shall comprise not less than ten acres of land. And the chief curative principles relied on shall be the ' movement cure,' hot and cold bathing, good air, gymnastic and other exercises, with great attention to diet, genial association and religious exercises. The architectural style of the buildings of said institution shall be plain, substantial and simple, and great attention shall be paid to convenience, comfort, good-sized rooms, and good air. When any person or persons, receiving the benefit of this institution, shall have so far recovered their health, or when, for any other reason, it is deemed advisable by said managers to discharge them, they shall do so, and admit others in their stead.

" Said corporation shall be composed of my said executors and trustees and their successors, and the persons associated with them in the act of incorporation, of such persons as may at any legal meeting be nominated and elected members by ballot, of such persons as shall at one time pay to the trustees, as an addition to the fund hereby created, the sum of one hundred dollars or more each; and also of such persons as pay into said fund the sum of twenty-five dollars, as an initiation fee, together with an annual subscription of three dollars; said last mentioned persons to be considered members while they shall continue the payment of said annual subscription of three dollars, and no longer.

" Whenever any one of the trustees of this fund and corporation shall die or resign, or from any cause become incompetent to perform this trust, another trustee in his stead shall be elected by ballot at a legal meeting of said corporation, duly notified for the purpose ; but no person so elected shall have power or authority to act as trustee of said fund, until approved by some Probate Court in said Commonwealth, or a corresponding jurisdiction.

" The officers of said corporation shall consist of the aforesaid trustees under my will, and their successors, a president, and vice-president, a treasurer, a secretary, a medical professional man, and a board of not less than nine managers; also of three supervisors, whose duty it shall be to examine into the affairs of said corporation as often as once in three months, and to report the general result of such examination through two of the leading newspapers of said Boston annually.

" All the officers of said corporation, other than the trustees, the manner of whose election is mentioned above, are to be elected annually by ballot at a legal meeting of said corporation called for the purpose.

" And my said executors and trustees are hereby requested and directed to dispose of and convey, by proper deed or deeds, under seal or otherwise, any and all property and estate of which I shall die seised or possessed, as soon after my decease as may be by them deemed wise ; and, after paying the legacies hereinbefore given, to prudently invest the residue, and hold it in trust, and pay the net income thereof to the treasurer of said corporation semi-annually, to be held by him subject to be disposed of by regular legal action of said corporation for the purposes of establishing and carrying on said ' Adams Nervine Asylum ' in said Commonwealth.

" Said fund, together with any accumulation thereof, to be reinvested as often as the same may be proper, and the net income to be used as aforesaid, forever, I meaning by ' accumulation ' any money or property received from contributions or otherwise.

" My said executors are hereby fully empowered and authorized to sell and convey in fee simple, for the purposes and in execution of this my last will and testament, and to execute and deliver deeds of conveyance, under seal or otherwise, of all

the real estate of which I may die seised or possessed, excepting my homestead aforesaid, without applying to any court or tribunal for license so to do; but, as far as practicable and satisfactory, I recommend dividing it.

" I nominate and appoint my brother, Isaac Adams, John N. Barbour, of Cambridge, and Charles Wells Cook, of Boston, to be executors and trustees of this will; and, having entire confidence in their faithfulness, I desire that no sureties be required of them in their probate bonds."

The information also alleged that the persons named as trustees in the will had done nothing for the erection of the public charity contemplated by the will, and had permitted two sessions of the Legislature to pass without applying for the charter which by the will it was made their duty to apply for as soon as practicable; that the relator Adams had resigned his office of executor and declined to serve as trustee, in consequence of fruitless attempts to induce Barbour and Cook to procure the charter; that Cook had resigned the trust, leaving Barbour sole executor and sole trustee; and charged that Barbour was an unsuitable person to be trustee of the charitable fund created by the will; that there was no adequate provision in the will for the appointment of new trustees to fill vacancies; and that the public interests imperatively required that Barbour should be removed from the trust, and that three suitable persons should forthwith be appointed trustees of the fund.

The answer admitted the will, and the appointment of the defendant and the two other persons named as executors and trustees; set up various claims which had been made against the estate which had prevented the ascertaining of the amount of the residue, and that it had not been deemed expedient to procure a charter for the charitable institution contemplated in the will, until the debts of the estate were paid; denied that there was danger that the intentions of the testator would be frustrated, or that the defendant was an unsuitable person to be trustee of the charitable fund created by the will; and contended that the defendant alone, since the resignation of the other trustees, was entitled to act as trustee, and that the court had no power to appoint another.

On August 11, 1876, *Ames*, J., made the following decree: " This cause came on to be heard this day, and the several parties were represented by counsel, and their proofs and arguments were fully heard and considered, and thereupon it is ordered, adjudged and decreed that James C. Davis, of Boston, be, and he hereby is, appointed a trustee under the will of the said Seth Adams, deceased, of the residuary fund by said will devoted to a public charity, in place of the said Isaac Adams, who has declined to accept the said trust, with all the same powers, rights and duties as if he had been originally appointed one of the trustees under the said will; and the said James C. Davis is ordered, before entering upon the duties of his trust, to give a bond, without sureties, in the sum of twenty thousand dollars to the judge of the Probate Court for the county of Middlesex, with condition for the faithful discharge of the duties of the said trust. And it is ordered that the said cause shall be retained for further directions."

On August 18, 1876, the same judge made a precisely similar decree, appointing Aquila Adams a trustee in the place of Charles W. Cook.

On December 5, 1876, the defendant claimed an appeal from these decrees, and the attorney general and the two new trustees consented that the claim of appeal might be entered with the same effect " as if it had been entered within thirty days from the date of each of said decrees; " and on December 7, *Ames*, J., ordered the appeal to be transmitted to the full court for hearing.

*R. Olney*, for the Attorney General.

*H. W. Paine & I. S. Morse*, for the defendant.

GRAY, C. J. By the Gen. Sts. *c.* 113, § 8, any party, aggrieved by a final decree of a single justice in equity, may take an appeal, within thirty days, by entering a claim of appeal upon the docket, and such appeal shall thereupon be pending before the full court. By § 10, " from all interlocutory decrees made by a single justice, any party aggrieved may appeal, in like manner, to the full court." By § 11, " all interlocutory decrees not appealed from shall be open to revision on appeals from final decrees, so far only as it appears to the full court that such final decrees are erroneously affected thereby." And by § 13, " a party, having by accident or mistake omitted to claim an appeal

from 'any final decree, within the time allowed for that purpose," may obtain leave to appeal by petition to the full court within one year after the entry of the decree.

Whether the decree of a single justice is final or interlocutory, an appeal therefrom does not depend upon his allowance or discretion, but is a matter of right. The time for claiming an appeal cannot be extended by consent of parties or by the justice whose decree is appealed from. *North British Railway* v. *Wauchope,* 4 Macq. 352. *Callan* v. *May,* 2 Black, 541. *Garrison* v. *Cass County,* 5 Wall. 823. *Gardner* v. *Dudley,* 12 Gray, 430. If an appeal is not taken within the time prescribed, the full court cannot acquire jurisdiction thereof, otherwise than upon a petition for leave to appeal according to the statute.

The appeal, in this case, not having been claimed within thirty days after the decree appealed from, must therefore be dismissed for want of jurisdiction; and we have no occasion to consider whether that decree is final or interlocutory only; or whether interlocutory decrees are subject to appeal on leave obtained from the full court upon petition, in like manner as a final decree, or, if not appealed from within thirty days, are conclusive, except so far as they may erroneously affect the final decree and be included in an appeal from that decree.

*Appeal dismissed.*

On January 13, 1877, *Ames,* J., made a decree rescinding the former decrees, the attorney general filed a general replication, and the judge made two new decrees precisely like the former ones; and the defendant appealed from the new decrees. The decree which rescinded the former decrees was not appealed from. The case was argued by the same counsel.

GRAY, C. J. It is within the general equity jurisdiction of this court to remove or appoint trustees under wills or other written instruments, upon sufficient cause shown. Gen. Sts. *c.* 100, §§ 8, 9; *c.* 113, § 2. *Bowditch* v. *Banuelos,* 1 Gray, 220. *In re Eastern Railroad,* 120 Mass. 412.

The testator by his will named three executors, and devised and bequeathed the residue of his estate to them, "and the survivors or survivor of them, their successors in said trust, their heirs and assigns forever," in trust to constitute a perpetual

fund, to be held and invested by the trustees, with power to sell and reinvest, and the net income thereof to be managed and dispensed for certain charitable purposes by a corporation to be established by the Legislature, and to be composed of said trustees and their successors, and such persons as they should associate with themselves in the act of incorporation, or as should be afterwards elected out of contributors to the fund; and provided that, in case of a vacancy in the board of trustees, the place should be filled by an election by the corporation.

The permanent trust, to hold, sell, invest and reinvest for the benefit of the charity, was not annexed to the office of executor, but was a distinct trust, although at first vested in the same persons who were named as executors. *Tainter* v. *Clark*, 13 Met. 220. *Clark* v. *Tainter*, 7 Cush. 567. *Carson* v. *Carson*, 6 Allen, 397.

Two of the persons named in the will have resigned, leaving the defendant sole executor and sole trustee. An act of incorporation not having yet been obtained, no provision is made in the will for filling the vacancies in the office of trustee. The will manifests the intention of the testator that the board should constantly consist of three trustees, and the words " the survivors and survivor of them " express no more than would have been effected by law, and do not restrict the power of the court to appoint new trustees in accordance with that intention. Gen. Sts. c. 89, § 14; c. 100, § 9. *Dixon* v *Homer*, 12 Cush. 41. The magnitude and importance of the trust, and the facts that there is now but a single trustee and that his fitness is in controversy, afford peculiar reasons for exercising this power.

*Decrees affirmed.*