MARY A. RIPLEY & others *vs.* JOHN F. BROWN & others, executors & trustees, & another.

Norfolk.   March 13, 1914.—May 22, 1914.

Present: RUGG, C. J., HAMMOND, LORING, BRALEY, & CROSBY, JJ.

*Probate Court,* Appeal. *Charity. Trust,* Validity. *Equity Jurisdiction,* Bill for instructions. *Words,* "Aggrieved."

A trustee under a will purporting to create a public charitable trust is a "person who is aggrieved," under the provisions of R. L. c. 162, § 9, by a decree of the Probate Court declaring the trust invalid, and may appeal therefrom although none of the trust provisions of the will are for his benefit.

A provision of a will gave to trustees $50,000, to which were to be added sums amounting to $33,000 on the deaths of certain persons who were to enjoy the income thereof during their lives, and directed the trustees to accumulate the income until, with or without contributions from others interested in the testator's plan, the entire sum should equal $100,000, when the trustees were to build and maintain a temple devoted to non-sectarian worship of Christ. There were further provisions as follows: "Should the conditions of this bequest . . . be in any way violated and not redeemed within a reasonable time (one year)" the trust fund and the temple property, if built, was to be given to

an "Industrial school and home," in which the teachings of Christ were to be taught, to be maintained for poor young men who should "show evidence of their worthiness satisfactory to the Trustees." If, when the sum of $100,000 was accumulated, there was no "spirit or desire among the people" for either the temple or the industrial school and home, the trustees were directed to permit the fund to accumulate for fifty years or until the entire fund equalled $500,000 when the income should be devoted to "the deserving poor of" Boston, other than in the maintenance of almshouses, and no deserving poor from outside the city were to be turned away if there was any of the income "in the Treasury to help their needs." More than eighteen years after the allowance of the will the heirs and next of kin of the testator sought to have the trust declared void. It appeared that the accumulated fund amounted to about $22,000, which had been applied in no way by the trustees. *Held,* that the provisions constituted a valid public charity, and were not subject to the rule against perpetuities; and that the duty of the trustees when the specified fund had been accumulated might be determined upon a petition for instructions filed by them at that time.

BILL IN EQUITY, filed in the Probate Court on October 24, 1911, by the heirs at law and next of kin of Jonathan Mann, late of Milton, against the trustees under his will and the Attorney General, praying that the trust attempted to be established by article 14 of the will, quoted in the opinion, be declared void and that the property held by the defendants by virtue of that article be declared to belong to the plaintiffs.

The will, as modified by a compromise agreement not affecting the terms of article 14, was allowed on April 5, 1893.

The case was heard in the Probate Court by *Flint,* J., who made a decree granting the prayers of the bill.

The defendants appealed. The plaintiffs moved to dismiss the appeal of the trustees on the ground that they had "no legal or financial interest in the subject matter of said bill," and were "not such parties as have a right by law to appeal."

The case was heard in this court by *Braley,* J., who found "that the plaintiffs are all the heirs at law or next of kin of the testator; that the inventory returned by the trustees shows only $31,876.26 of personal property, and the last account filed by them shows a balance in their hands of $21,964.58, which may be increased by the principal of other trusts under the will upon the death of the beneficiaries for life. No temple has been built or school founded, as called for by the fourteenth clause."

The single justice reserved the case for determination by the full court.

*F. T. Field,* for the executors and trustees, was not called upon.

*L. R. Eyges,* Assistant Attorney General, for the Attorney General.

*T. Eaton,* for the plaintiffs.

BRALEY, J.   It is the duty of the trustees, in whom the legal title properly vested, to administer the provisions of the will as directed by the testator unless they are declared invalid by a court of competent jurisdiction. *Hall* v. *Cushing,* 9 Pick. 395. *Codman* v. *Brigham,* 187 Mass. 309, 314.   And while, if no appeal had been taken, they would be protected by the probate decree setting aside the clause in question and establishing a resulting trust in favor of the heirs to whom the moneys forming the trust fund will be paid, nevertheless, they were persons "aggrieved" within the meaning of R. L. c. 162 § 9, and their appeal, as well as the appeal of the Attorney General, is properly before us. *Adams* v. *Adams,* 211 Mass. 198.   *Whitwell* v. *Bartlett,* 211 Mass. 238.   *Burroughs* v. *Wellington,* 211 Mass. 494.   *Minot* v. *Attorney General,* 189 Mass. 176.

But if the motion to dismiss cannot be granted, the principal question discussed is whether the fourteenth article, which is not affected by the agreement of compromise, created a good public charity.   It reads as follows: "I give, devise and bequeath to my said trustees the sum of Fifty thousand dollars to which shall be added after the death of my wife Betsey Mann Fifteen thousand dollars, after the death or marriage of Emma A. Leeds twelve thousand dollars, after the death or marriage of Carrie S. Leeds, six thousand dollars, (see Articles one, two and three,— of this my last will and testatment, to which this refers.)   These amounts combined making eighty-three thousand dollars shall be held in trust by my said trustees and kept invested in accordance with their best judgments the income and profits thereof shall be added semi-annually to the Principle until it shall amount to the sum of one hundred thousand dollars, or until a society shall be formed who will contribute a sum equal to said eighty-three thousand dollars and its accumulated intèrest to make the same amount at which time the said one hundred thousand dollars together with the same amount (or more) that may be contributed by said society (if any such shall be) shall be devoted to the building and maintaining of a Temple that shall be consecrated

to that Christ who has been revealed unto us in the New Testament as having been born of woman. Therefore no Theory is called for. Said Temple, the walls thereof shall be constructed of Granite and located in the City of Boston, Mass. The name thereof shall be the temple of Christ, no sectarianism or worldly matters shall be taught or preached within the walls of said Temple, the Preachings and Teachings shall be to the praise and glory of Christ and that which pertains to the eternal happiness or misery of the souls of the children of men, in the spirit world, *and only this* whereby this Temple shall not be desecrated neither in any way diverted from the Praise and Glory of that Christ who gave his life whereby the children of men should meet him in the spirit world if they would, and be eternally happy, may all those who have a desire to be with a greater God then Christ (if any such there be) try and conform to this reasonable request by adopting the words of Ruth and Naomi, and say unto Christ whither thou goest I will go where thou lodgest I will lodge. Thy people shall be my people. Thy God my god. Should the conditions of this bequest of Article 14 in this my last will and testament be in any way violated and not redeemed within a reasonable time (one year) then all the property both principle and interest, together with the Temple and all its furnishings (if already built) shall be forfeited, surrendered, given up, and conveyed to an Institution to be then founded to be called the Industrial School and Home, and its maintenance for Poor young men, and all the Religious teachings that shall be taught in this Institution shall be the same as taught by Christ while on earth to the rich and to the poor, and every Inducement shall be held out to those young men to obey the Teachings of Christ to whom this Institution shall be consecrated. If the before named Temple has not been built then a building or buildings commensurate with this calling shall be built with Granite walls and such accommodations within as shall be found necessary by my Executors, Trustees (both being the same). It is the design of the Legator should an Institution be founded that different employments should be learned most suitable for the mind and the cultivation thereof, whereby such young men may become good and Industrious servants of Christ, and for the children of men. After they shall have enjoyed the benefits of this Institution for

Two or more years and have been faithful a reward shall be paid to each of them of Two hundred dollars and such other rewards as shall be thought proper by the Trustees of the aforesaid Institution. The Trustees, Executors of this my last will and testament shall have full powers over this Institution and also the same powers over the before named Institution to be called the Temple of Christ should it have preceded the Institution last named in this my last will and testament. All young men who may have a desire to enter said Institution the Industrial School and Home for poor young men (should it ever be founded) must show evidence of their worthiness satisfactory to the Trustees thereof to be admitted. When the aforesaid eighty-three thousand dollars with accumulated interest shall amount to one hundred thousand dollars and there shall appear to be no spirit or desire among the people to have such Temple built and consecrated to Christ as shown in article fourteen (14) of this my last will and testament, neither a spirit or desire to have founded the Industrial school and home for poor young men who shall be found worthy of such home; Then the trustees of this my last will and testament shall continue to keep the said one hundred thousand dollars invested in accordance with their best judgments adding all income and profits thereof to the principle for the term of Fifty years, or until it shall amount to Five hundred thousand dollars at which time the income and profits thereof shall be appropriated and paid to the deserving poor of the City of Boston, Mass. while time shall remain. No deserving poor outside of the City shall be turned away if there be Funds from the income thereof in the Treasury to help their needs; should this Bequest before mentioned in Article 14 be finally appropriated to this use, it is not the will of the Testator that it should be appropriated to the maintenance of Almshouses, but to help the very deserving poor who try to help themselves."

The principal objects which may be promoted by charitable gifts so recently have been pointed out that whether the trust is valid is very nearly settled by *Molly Varnum Chapter D. A. R.* v. *Lowell,* 204 Mass. 487, 492, 493, 494, and cases cited; *New England Sanitarium* v. *Stoneham,* 205 Mass. 335, 341, 342; *Little* v. *Newburyport,* 210 Mass. 414; and *Chase* v. *Dickey,* 212 Mass. 555. To endow or build a church for the worship of Christ, or

an industrial school and home with spiritual instruction for poor young men, or to give a fund the income of which shall be applied for the relief of the deserving poor of a designated municipality, constitutes a good charitable trust. *Going* v. *Emery,* 16 Pick. 107. *Morville* v. *Fowle,* 144 Mass. 109. *Farrigan* v. *Pevear,* 193 Mass. 147. *Odell* v. *Odell,* 10 Allen, 1. The general intention of the testator is clearly expressed and his charitable purposes are definite. If by the administration of the trust an indefinite number of persons will be benefited, indefiniteness of the recipients is a distinguishing feature of a public charity. *Weber* v. *Bryant,* 161 Mass. 400, 403.

While nearly twenty-one years have elapsed since the will was admitted to probate, and the fund as shown by the last account of the trustees is little more than a quarter of the amount provided by the testator for the temple and the school, yet the provision for accumulation is not invalid even if the period may run far beyond the time prohibited by the rule against perpetuities. *St. Paul's Church* v. *Attorney General,* 164 Mass. 188, 204. *Codman* v. *Brigham,* 187 Mass. 309. The testator contemplated that many years necessarily must follow before either the temple or the school could come into existence upon an endowment sufficiently ample for their successful establishment.

If at the termination of the first period of accumulation the trustees are in doubt whether the trust for the temple can be administered as he directed under the conditions then existing, they should apply for further instructions. It will then be within the power of the court of probate, or of this court, unless their jurisdiction is changed, to determine whether there is any public demand for the temple or the school, and to decree whether the fund is sufficient for its founding and maintenance, or whether the fund should be applied in aid of the deserving poor, and to frame a scheme accordingly, or whether a further accumulation for fifty years should be decreed, or until the fund amounts to "Five hundred thousand dollars," before the third mode is adopted. *St. Paul's Church* v. *Attorney General,* 164 Mass. 188. *Richardson* v. *Mullery,* 200 Mass. 247. *Grimke* v. *Attorney General,* 206 Mass. 49.

The motion to dismiss is overruled, and the decree appealed from must be reversed and the petition dismissed.

*So ordered.*