GEORGE A. CRAWFORD & others, trustees, *vs.* LEOPOLD A. NIES & others.

Suffolk.    March 23, 1916. — June 21, 1916.

Present: RUGG, C. J., LORING, BRALEY, DE COURCY, & PIERCE, JJ.

*Trust,* Charitable.  *Charity.*  *Religious Society.*  *Constitutional Law.*  *Bromfield Street Methodist Episcopal Church in Boston.*  *Cy Pres.*  *Equity Pleading and Practice,* Cross bill, Bill of review.  *Equity Jurisdiction,* Administration *cy pres,* For removal of trustees, For an accounting.  *Attorney General.*

By a deed delivered and recorded in 1806, certain land was conveyed to trustees "to have and to hold . . . unto them . . . and their successors in office for ever in trust that they shall erect and build or cause to be erected and built thereon a house or place of worship for the use of the members of the Methodist Episcopal Church in the United States of America according to the rules and discipline which from time to time may be agreed upon and adopted by the Ministers and preachers of the said Church at their general conferences in the United States of America and in future trust and confidence that they shall at all times forever hereafter permit such Ministers and preachers belonging to the said Church . . . to preach and expound God's Holy Word therein." *Held,* that a valid charitable trust was created by the deed, whereby the legal title to the land was vested in the trustees for the use and benefit "of the members of the Methodist Episcopal Church in the United States of America" who might choose to attend worship in the church erected and maintained on the land.

The above described trust deed also provided that the land was held "in further trust and confidence that as often as any one or more of the Trustees hereinbefore mentioned shall die or cease to be a member or members of said Church

according to the rules and discipline as aforesaid then and in such case it shall be the duty of the stationed Minister or preacher authorized as aforesaid who shall have the pastoral charge of the members of the said church to call a meeting of the remaining trustees as soon as conveniently may be and when so met the said Minister or preacher shall proceed to nominate one or more persons . . . and the said trustees so assembled shall proceed to elect and by a majority of votes shall appoint the person or persons so nominated to fill such vacancy or vacancies." The deed contained no provision that the trustees might incorporate and convey the land to the incorporated body. The trustees incorporated, but made no conveyance as trustees to the corporation. As vacancies occurred among the trustees, no uniform method of filling the vacancies was followed, but it was apparent from the records of the society and various statutes enacted relating to the corporation that the trustees and the governing officials and boards representing the society considered that the trustees were in charge administering the property in accordance with the rules of government of the society. *Held,* that the legal title to the property remained in the trustees appointed by the deed and in their successors chosen in accordance with its provisions, that it was not affected by the statutes relating to the incorporation of the trustees, and that the purposes for which the trust was to be administered were not changed by the conduct of the trustees and the beneficiaries.

By a decree in a suit in equity, in which all parties were represented and which was brought to determine the rights and powers of the trustees under the above described deed, it was ordered that the incorporated trustees should convey the property to certain persons named as trustees in the decree who should hold it subject to the trusts set forth in the original deed, and such conveyance was made. *Held,* that after such decree the trustees named in the decree became the only persons authorized to execute the trust, over which the court as a court of equity had acquired and retained full jurisdiction.

The Legislature has no power to terminate such a trust.

If, under a special statute providing that the trustees appointed by the court as above described might sell the property, and that the net proceeds of sale should "be held and disposed of by said trustees for the use of the members of the Methodist Episcopal Church in the United States of America, according to the rules and discipline which from time to time may have been or may be agreed upon and adopted at the general conferences of said church in the United States of America, and the final application of said proceeds, in accordance with said rules and discipline, to be a full discharge of the said trustees, the trusts of said deed being thereupon terminated," a sale is made, the trustees thereafter continue to hold the proceeds of the sale subject to the trusts specified in the original deed and do not hold them subject to the trusts described in the statute.

*Whether* a cross bill, filed in a suit in equity after a decision and rescript of this court determining issues of law raised by the original bill, which sought an adjudication of the rights of the plaintiffs in the cross bill, as four of nine trustees under a deed of land, in the proceeds of a sale of the land made under a decree of court, can be treated as in the nature of a bill of review of the decree of sale, was not determined in this suit, this court holding that, there being no evidence of accident, fraud or mistake affecting the decree and some of such plaintiffs, acting under advice of counsel, having sought the decree, the equities were against the plaintiffs and no reasonable ground for vacation of the decree was shown.

A bill in equity cannot be maintained by the minority of trustees, who under a

trust created by a deed of land hold, for the use and benefit of the members of the Methodist Episcopal Church in the United States of America who had chosen to attend worship in a church formerly upon the land described in the deed, a fund which is the proceeds of a sale of the land, to remove the majority of the board from office because they are unwilling to accede to the views and desires of the plaintiffs and ninety per cent of the members of the society which formerly worshipped in the church.

In 1806 land was conveyed to trustees in trust to erect a church thereon for the use of the members of the Methodist Episcopal Church in the United States of America according to the rules and discipline which from time to time might be agreed upon and adopted by the governing bodies of that church. In 1913, owing to changed conditions in the locality where the land and church building were situated, a sale of the property was made under a decree of court having jurisdiction of the parties and the subject matter, which directed that the proceeds of the sale should be held by the same trustees, and this court in a suit in equity to determine the rights of the trustees as to that fund determined that it should be held subject to the same trusts as those described in the original trust deed. Upon a cross bill by a minority of the trustees, it also was *held,* that no occasion was shown for an application of the doctrine of *cy pres.*

In the same case it *was stated* that, if the trustees neglect or refuse to execute the trust or abuse their powers, the Attorney General on his own initiative or at the relation of those who are beneficially interested can petition for their removal and also can have relief in equity for an accounting.

And it *also was stated* that, if the trustees are uncertain as to their powers and duties or are unable to agree among themselves as to them, they can ask for instructions, making the Attorney General a party defendant.

BILL IN EQUITY, filed in the Supreme Judicial Court on June 7, 1913, by George A. Crawford, Alexander S. Heath, Ray P. Stewart and Alvah G. Sleeper, four of nine persons appointed in 1913 by the Supreme Judicial Court, in a suit entitled Trustees of the Methodist Religious Society in Boston v. Albert R. Whittier, as successors to the trustees named in a deed, dated March 25, 1806, of William Hall Jackson to Amos Binney and others, as trustees, of property on Bromfield Street in Boston (which is described in the opinion) and to trustees appointed in previous legislative enactments and suits in equity, against the resident pastors of a Methodist Episcopal Church formerly maintained upon the land so conveyed and afterwards maintained in an edifice on Tremont Street in Boston, the district superintendent of the church, the resident bishop, and the other five trustees, Harvey N. Shepard, John L. Bates, James F. Lockwood, William Armstrong and Frank P. Luce, who were appointed at the same time with and in the same manner as were the plaintiffs, and also against four others, William H. H. Bryant, Everett O. Fisk, Charles H. J.

Kimball and A. Howard Powers, who with the other five defendant trustees had been elected trustees to succeed the plaintiffs by the quarterly conference of the religious society and under its rules of government. The bill in substance alleged that such election was of no effect to oust the plaintiffs from their office as trustees, that the defendant board of trustees were holding illegally a fund which represented the proceeds of the sale of the land conveyed by the deed of Jackson to Binney and others, described in the opinion, and sought a determination of what persons as trustees had a right to the possession and control of those funds. Also a

CROSS BILL IN EQUITY, filed on October 14, 1915, by the defendants in the above bill, except William Armstrong, against the plaintiffs and William Armstrong, seeking the relief described in the opinion.

By agreement of all the parties, the Attorney General was joined as a party defendant in both bills and, while the case was pending in this court, filed a waiver of any right to be heard.

The original suit was referred to a master, and, upon a reservation, it was determined by this court in a decision reported in 220 Mass. 61, that the trustees appointed by the decree of 1913, which included the four plaintiffs and the five defendants first named above, were "entitled to the proceeds of the sale of the Bromfield Street real estate and" were "to hold them in accordance with the trusts of the Jackson deed of 1806."

After the decision on the original bill, leave was given for the filing of the cross bill for the purposes described in the opinion. An answer having been filed and issue having been joined, the cross suit was referred to the same master who had heard the original bill. From the report of the master the following facts appeared among others:

During the year 1912 there were differences of opinion among the trustees as to the application of any part of the income from the money or property received as the proceeds of the sale of the church property. Some of the trustees expressed their desire to provide another place of worship for the society and attempted to do so, while the other trustees were in favor of having worship conducted in the church building on Tremont Street. During that year certain sums of money were voted by the trustees for the use of the society in carrying on its work in the Tremont Street

church, and at the election of trustees by the quarterly conference in 1913 the defendants in the cross bill, Crawford, Heath, Stewart, and Sleeper, were not re-elected as trustees and the plaintiffs Bryant, Powers, Fisk, and Kimball were elected in their places. In the year 1914 the same trustees were elected as in 1913, but in 1915 Armstrong was not re-elected and C. O. Kepler was elected in his place.

During the years 1913 and 1914 the trustees elected under the Discipline [the book containing the rules of government of the Methodist Episcopal Church] administered the fund received from the sale of the church property, and the proceeds of the sale were continued in the custody of Shepard, Lockwood and Luce, who continued in their possession to the time of the hearings upon the cross bill. No question was made that the funds had not been properly invested and cared for, and it was agreed that the fund remained intact except for such sums as from time to time had been paid from the income in accordance with the direction of the quarterly conferences and the votes of the trustees and under an interlocutory decree entered in this case.

After receipt of the rescript from this court on the original bill, the trustees appointed by the court met and voted to appoint a committee to determine by-laws for their government. Subsequently eight meetings of this board were held, at which various matters had been acted upon. The five persons named as defendants in the cross bill made a majority of the nine persons appointed by the court, and in all matters of importance at the meetings they voted against the other members. The quarterly conferences from time to time had directed them to provide money for assistance in support of worship at the Tremont Street church and in payment of the salary of the minister, but on each of these requests the five members who are defendants in the cross bill voted not to comply with such directions, while the other four trustees voted in favor of complying with the directions.

At the quarterly conference held on April 4, 1915, it was voted to request the bishop to inform the society what were the rights of the quarterly conference in reference to the trustees who held the proceeds of the sale of the property, and whether the board of trustees was not amenable to the quarterly conference as a board of trustees of the Methodist Episcopal Church, and what proce-

dure the society should undertake in order that the trust in the original deed be carried out.

In response to this request the bishop rendered an opinion upholding the quarterly conference.

At a meeting of the trustees held on April 12, 1915, communications from the quarterly conference containing the opinion of the bishop were read, and thereupon it was voted: "That this board denies the right of any bishop, or any quarterly conference to control the actions of this body." On this vote the five trustees who are defendants in the cross bill voted in favor of and the other four trustees voted against its adoption. Since that meeting there have been other meetings of the trustees, at which Crawford has been elected president of the board and Sleeper has been elected treasurer and a committee consisting of the president, treasurer, secretary and two other members has appointed to have the custody of the trust fund, and demand has been made that the former committee turn the fund over to them. This the former committee have refused to do until directed to do so by decree of court. In all of these matters the votes were, the five persons who are defendants in the cross bill against the four others, and the five persons stated that they did not consider that as trustees they were accountable to any authority other than this court, and refused to join in a petition to the court for instructions.

There was a committee appointed by the president of the board to investigate and make report as to what use should be made of the trust fund, and Crawford as chairman of that committee reported that the committee was of opinion that no part of the fund should be used upon the church property on Tremont Street, and that "in looking for a place where a new plant would be productive, with the prospect of ever increasing opportunities for usefulness and the certainty of results justifying the expenditure of whatever sums might be necessary for the full equipment of the work and the application of the greatest efforts within our control, we are attracted and impressed by the proposition to build a church to be known as 'The Church of All Nations.' This church would be associated with but not under the control of the Morgan Memorial work. The building and the work would be ours but would command the sympathy and support of many philanthropic people who are not Methodists and who could not be induced to

give either sympathy or support to the ordinary forms of activity of any Methodist Church. We recommend that the committee be continued under instruction to secure and report the fullest details as to the location, cost of land, building and equipment for such a work."

The master further found: "The Bromfield Street society has been joined with the Tremont Street society, and the combined societies are recognized by the Annual Conference as the Methodist Religious Society in Boston commonly known as the Bromfield Street society. The society is possessed of the church property on Tremont Street, and religious services are being regularly conducted in that building, which I find to be a sufficient building for all of the purposes of the society at the present time. The members of the society as at present constituted, with the exception of not more than one tenth thereof, are satisfied to continue worship in the present building, and have no desire for the erection of a new building. The society is at present in satisfactory condition; the attendance at services is large, and in the various branches of the work in connection with the church work there is an active interest manifested. The society is, however, in need of financial assistance in carrying on its work, and the cutting off of the assistance it has been receiving from the income from the fund in the hands of the trustees has impaired the work which was being done. With the exception of the members in the proportion above stated, all of the members of the society approve of the filing of the cross bill in this case, seeking a determination of the rights of the trustees and of the society in and to the trust fund.

"The title to the church property on Tremont Street has never been in the board of trustees appointed by the court, but has been in the trustees elected under the Discipline."

Other material facts found by the master are stated in the opinion.

The only exceptions to the report of the master were by the defendants in the cross bill and were described by the master, as follows:

"The evidence offered in support of the allegations in the cross bill was largely documentary, consisting of the early records of the church society, records of the quarterly conferences, copies

of deeds, and early editions of the Discipline of the church as it had from time to time been amended or changed.

"The plaintiffs [defendants in the cross bill] objected to the introduction of the records of the society and of the quarterly conferences, and stated as their objections, first, that the records were not properly identified; secondly, that they were offered for the purpose of varying the terms of a written instrument; and thirdly, because they have no bearing upon the matters in issue.

"It was agreed that at the time when the church property was sold, and it became necessary to remove all of the personal property of the society therefrom, a large amount of the personal property was removed to a storage warehouse in Boston, including a safe which had been used by the officers of the society, and that during the progress of the hearings upon the original bill of complaint, and at some subsequent time, counsel for the petitioners and counsel for the respondents (each of counsel being members of trustees appointed by the court) went to the storage warehouse and took from the safe the books which were offered in evidence. Many of the books contained records under dates so many years ago that it was apparent that it was impossible to produce the person who had made the entries, and in view of the place and manner in which the possession of the books had been kept I ruled that they had been sufficiently identified to be offered and received in evidence. So far as the objections related to the second and third objections I ruled that the records be admitted; to all of which rulings the plaintiffs requested that their objections be noted."

In their brief before this court the defendants in the cross bill stated: "The first objection as to the proper identity of the records is hereby waived, but we urge that the records offered as evidence are improperly admitted for the purpose of varying the terms of a written instrument."

The case was reserved by *Pierce*, J., for determination by this court "upon the master's report under cross bill and the exceptions thereto of the defendants in the cross bill, and for final decree. . . . Reference may be had to the printed record in the original case, such final decree or decrees to be ordered on the entire case as to justice and equity shall appertain."

*A. G. Sleeper*, for the plaintiffs.

*H. N. Shepard & J. L. Bates*, (*J. E. Macy* with them,) for the defendants.

BRALEY, J.   The defendants after the decision and order for a final decree in *Crawford* v. *Nies*, 220 Mass. 61, were permitted to file a cross bill.   The original plaintiffs having answered and issue having been joined the case was recommitted to the master, and under the reservation of the single justice is before us upon the pleadings, the master's report and the exceptions thereto, with leave to refer "to the printed record in the original case, such final decree or decrees to be ordered on the entire case as to justice and equity shall appertain."   We shall for convenience in designation refer to the plaintiffs in the cross bill as the plaintiffs, and to the defendants therein, who alone excepted, as the defendants.   But their first exception having been waived, and the remaining exceptions, that the records of the society admitted in evidence were offered for the purpose of varying the terms of a written instrument, and that the records "have no bearing upon the matters in issue," being without merit or immaterial, the question for decision is, whether upon the record now presented the order for the decree, "that the trustees appointed by the court decree of 1913 are entitled to the proceeds of the sale of the Bromfield Street real estate and are to hold them in accordance with the trusts of the Jackson deed of 1806," should be reversed or modified.   *McKarren* v. *Boston & Northern Street Railway*, 194 Mass. 179.   *First Baptist Church of Sharon* v. *Harper*, 191 Mass. 196.   *Crawford* v. *Nies*, 220 Mass. 61, 67.   The specific prayers in substance ask, that the proceeds of the sale of the trust property shall be held by the plaintiffs and their successors for the support of a church building or place of worship for the use of the members of the "Methodist Religious Society in Boston," subject to the rules and Discipline of the Methodist Episcopal Church of the United States, the trustees forever to permit such ministers and preachers as may be duly authorized by the authorities of said church to preach therein, and for the general uses and purposes of the society under and in accordance with the Discipline; that the trustees heretofore appointed by decree of this court be discharged, and that the plaintiffs and their successors elected according to the Discipline of the said church for the said

religious society, as the Discipline may from time to time provide should be the trustees who at all times are to be subject to the control of and accountable only to the church authorities, with a general prayer for such other and further relief as the court deems appropriate.

While the master states that there was no evidence that any society was ever known as the "Methodist Religious Society," except as such inference might be drawn from the fact that when the trustees were incorporated by the St. of 1808, c. 70, they were designated under the name of "Trustees of the Methodist Religious Society in Boston," the second as well as the first report leaves no doubt that the local body of worshippers from the beginning were in affiliation with the general organization known as the Methodist Episcopal Church and intended to conform to its discipline. It having become expedient to provide a house of worship, land was purchased and a church building erected partially paid for by moneys raised by donations. The title was held by nine trustees named in the indenture between William Hall Jackson and Amos Binney and others, among whom were Binney and himself, dated March 24, 1806, and duly recorded. By the terms of the instrument the trustees and their successors in office held the property "for ever in trust that they shall erect and build or cause to be erected and built thereon a house or place of worship for the use of the members of the Methodist Episcopal Church in the United States of America according to the rules and Discipline which from time to time may be agreed upon and adopted by the Ministers and Preachers of the said Church at their general conferences in the United States of America and in further trust and confidence that they shall at all times forever hereafter permit such Ministers and Preachers belonging to the said Church as shall from time to time be duly authorized by the general conferences of the Ministers and Preachers of the said Methodist Episcopal Church, or by the yearly conferences authorized by the said general conferences and none others to preach and expound Gods Holy Word therein and in further trust and confidence that as often as any one or more of the Trustees hereinbefore mentioned shall die or cease to be a member or members of said Church according to the rules and Discipline as aforesaid then and in such case it shall be the duty of the stationed Minister or Preacher authorized as aforesaid who shall have

the pastoral charge of the members of the said church to call a meeting of the remaining Trustees as soon as conveniently may be and when so met the said Minister or preacher shall proceed to nominate one or more persons to fill the place or places of him or them whose office have been vacated as aforesaid provided the person or persons so nominated shall have been one year a member or members of the said Church immediately preceding such nomination and of at least twenty-one years of age and the said Trustees so assembled shall proceed to elect and by a majority of votes shall appoint the person or persons so nominated to fill such vacancy or vacancies in order to keep up the number of nine Trustees for ever and in case of an equal number of votes for and against the said nomination the stationed Minister or Preacher shall have the casting vote. Provided Nevertheless That if the said Trustees or any of them or their successors have advanced or shall advance any sum or sums of money or are or shall be responsible for any sum or sums of money on account of the said premises and they the said Trustees or their successors be obliged to pay the said sum or sums of money, they or a majority of them shall be authorized to raise the said sum or sums of money by selling the pews in the said house when completed for that purpose subjecting the purchasers, however to the rules and Discipline of the said Methodist Episcopal Church as aforesaid forever or by a mortgage on the said premises or by selling the said premises after notice given to the Pastor or Preacher who has the oversight or charge of the Congregation attending divine services on the said premises if the money due be not paid to the said Trustees or their successors within one year after such notice given and if such sale take place the said Trustees or their successors after paying the debt and all other expenses which may be due from the money arising from such sale, shall deposit the remainder of the money arising from such sale in the hands of the Stewards belonging to or attending Divine Service on the said premises.which surplus of the produce of such sale so deposited in the hands of the said stewards shall be at the disposal of the next yearly conference authorized as *as* aforesaid which said yearly conference shall dispose of the said surplus money according to the best of their Judgment for the use of the said Society."

The instrument being free from ambiguity, it cannot be varied

or controlled by extrinsic evidence. A valid charitable trust was created, under which the legal title vested in the trustees for the use and benefit "of the members of the Methodist Episcopal Church in the United States of America," who might choose to attend worship in the church erected and maintained on the land. *Austin* v. *Shaw*, 10 Allen, 552. *Chase* v. *Dickey*, 212 Mass. 555. *Ripley* v. *Brown*, 218 Mass. 33. *Crawford* v. *Nies*, 220 Mass. 61, 64.

The mode of filling vacancies as they occurred after the trustees by vote had increased their number to fifteen, which included seven of the original trustees, and their incorporation by St. of 1808, c. 70, as well as under the amendatory act of 1828, c. 144, reducing their number to nine and providing that the pewholders should nominate suitable persons, being "members of the said Society and inhabitants of said Boston" to fill vacancies, "and from such nominations the remaining trustees shall proceed to elect by a majority of votes a person to supply such vacancy," was not uniform. The master finds that sometimes the St. of 1808, c. 70, was complied with while at other times the trustees were nominated by the pewholders until the St. of 1828, c. 144, after which nominations were made only by the pewholders, although upon appointment they performed all the duties appertaining to their office as required by the Discipline. He also found that in the sale and conveyance of portions of the property they acted as if they were not an incorporated board, but had been chosen in the matter prescribed by the Discipline, "and it is apparent from the records of the trustees and of the quarterly conferences that the trustees and the governing officials and boards representing the society considered that the trustees were properly in charge of the church property and conducting its management in accordance with the Discipline as from time to time in force until the year 1891." But the society itself as a voluntary religious association, whatever its name, never had title to the property of the trust which the trustees could convey under either the St. of 1808, c. 70, or St. 1847, c. 280, §§ 1, 2, Gen. Sts. c. 30, §§ 43–45, St. 1874, c. 177, Pub. Sts. c. 39, §§ 1, 4, St. 1884, c. 78, relating to the powers of trustees of any society of the Methodist Episcopal Church to transfer parochial property. *Sohier* v. *St. Paul's Church*, 12 Met. 250. *Currier* v. *Trinity Society*, 109 Mass. 165. *First Baptist Church of Sharon* v. *Harper*, 191 Mass. 196, 206, 207. See R. L. c. 37, §§ 1–4, 6. The

act of incorporation did not change the trust, which remained the same as if the statute had not been passed. *Hadley* v. *Hopkins Academy,* 14 Pick. 240, 254, 255.

It is also plain that before the enactment of St. 1878, c. 254, § 1, if vacancies occurred the new trustee or trustees would not acquire title unless by conveyance from the surviving members of the original board, or their successors to whom title had been lawfully transmitted. *Peabody* v. *Eastern Methodist Society in Lynn,* 5 Allen, 540. *Glazier* v. *Everett, ante,* 184, and cases cited.

A brief reference to the title after the trustees voted to mortgage the property to provide funds for the payments maturing on the purchase price of the land, and on the contract entered into by them for the erection of the church building, will be sufficient. The various transfers are enumerated and fully described in the master's elaborate report. If the method chosen was not technically adapted for the purpose, and on their face the conveyances are absolute in form, yet all parties understood that the transaction was intended as a mortgage and as security for the reimbursement of whomsoever might lend or advance the required amount. *Campbell* v. *Dearborn,* 109 Mass. 130. The local society thereafter and until the sale under the decree of this court hereinafter referred to continued to use the premises for religious worship, and the master reports that the property remained in the unquestioned control and management of the original trustees or of their successors after as well as before incorporation, until the transfer to the board of trustees appointed by the court, a period substantially of eighty-two years.

The charity however was not thereby extinguished. It could not be remoulded or changed to a trust to be treated and administered exclusively for the maintenance and benefit of the society. No provisions are found in the deed authorizing a resettlement or devolution of the property in the discretion of the trustees, or releasing the property from the charitable purpose to which it had been devoted and dedicated. Perry on Trusts, §§ 346, 347. *Bartlett* v. *Nye,* 4 Met. 378, 380. *Boxford Religious Society* v. *Harriman,* 125 Mass. 321, 328. *Winthrop* v. *Attorney General,* 128 Mass. 258. *Missionary Society* v. *Chapman,* 128 Mass. 265, 268. St. 1808, c. 70. St. 1828, c. 144.

By the decree of October 8, 1891, in a suit brought in this court

to determine their rights and powers,* the incorporated trustees were ordered to convey by a sufficient deed to the trustees appointed and named in the decree, all the real estate "as had not been conveyed to other parties" described in the "deed from William Hall Jackson to Amos Binney and others being the real estate generally known as the 'Bromfield Street Church Estate' . . . to hold, manage, or convey said estate upon the trusts and for the purposes as set forth in said deed from William Hall Jackson to Amos Binney and others."

Whichever way is taken the result is the same. If the trustees appointed under the Discipline had no title, the trust had not perished. *Bartlett* v. *Nye*, 4 Met. 378, 380. *Sells* v. *Delgado*, 186 Mass. 25, 28. And the trustees appointed by the court were seised of the legal estate. *Hadley* v. *Hopkins Academy*, 14 Pick. 240, 253. Pub. Sts. c. 141, §§ 5, 6. If they had title under the St. of 1808, c. 70, § 4, or by succession under the indenture, that title passed by their conveyance under the order of the court to the trustees named in the decree. This decree not having been vacated, and the conveyance having been made, the trustees thus appointed were the only persons authorized to execute the trust

---

* This suit is described by the master as follows: "In the year 1889 the plaintiff Crawford was assigned by the bishop at the Annual Conference to be the minister at the Bromfield Street church. Because of differences of opinion between the trustees and him as to the rights and powers of the trustees over the church property, he made contention that the trustees did not properly hold title to the property. The matter was discussed at the quarterly conferences, and at the quarterly conference held on November 4, 1889, Doctor Crawford and Silas Pierce were authorized to institute proceedings in this court for the appointment of trustees to hold title to the property under the original deed; and subsequently such a petition was filed in this court, which with the proceedings thereunder appears in the case of George A. Crawford et al., petitioners, numbered 3007 on the equity docket. The case was referred to a master, but no hearings were had, and after the matter had been discussed at great length among the parties interested, a decree was entered by and with the consent of all parties on October 8, 1891, in which nine persons were named as trustees, and it was ordered that the incorporated trustees convey by proper deeds, to the trustees therein named and appointed, the land (or so much thereof as had not been conveyed to other parties) described in the deed of Jackson to Binney et als., to hold, manage, or convey the same upon the trusts and for the purposes set forth in the original deed."

over the administration of which the court as a court of equity had and retained full jurisdiction. *Bowditch* v. *Banuelos,* 1 Gray, 220. *Attorney General* v. *Barbour,* 121 Mass. 568, 573. *White* v. *Gove,* 183 Mass. 333. *Jackson* v. *Phillips,* 14 Allen, 539, 567, 577. *Sohier* v. *Trinity Church,* 109 Mass. 1, 17. *Chase* v. *Dickey,* 212 Mass. 555. Perry on Trusts, (6th ed.) § 282. Pub. Sts. c. 141, §§ 5, 20, now R. L. c. 147, §§ 5, 15.

The decree and vesting of the title do not appear to have settled the controversy, and the master states that while at first the trustees appointed by the court were also appointed in accordance with the Discipline, yet when vacancies occurred they were not filled as required by the terms of the deed, but as prescribed by the Discipline "as it existed at the respective times."

The trustees, however, appointed under the Discipline subsequent to the decree do not appear to have acquired any title to the fee, and, it having been decided to sell the property which had very greatly appreciated in value and become undesirable as a place for religious worship, they petitioned the Legislature, and the St. of 1892, c. 103, was passed. By this statute the trustees appointed by the court were authorized to sell at public or private sale, "Such sale and conveyance to be made with the consent of the persons or bodies whose consent to sales of real estate is required by the Discipline and usages for the time being of the Methodist Episcopal Church in the United States of America; — the net proceeds of sale to be held and disposed of by said trustees for the use of the members of the Methodist Episcopal Church in the United States of America, according to the rules and Discipline which from time to time may have been or may be agreed upon and adopted at the general conferences of said church in the United States of America, and the final application of said proceeds, in accordance with said rules and Discipline, to be a full discharge of the said trustees, the trusts of said deed being thereupon terminated."

The Legislature had no power to terminate the trust, and if a sale were effected the proceeds would go to the trustees and their successors appointed by the court in accordance with Pub. Sts. c. 141, §§ 5, 6, (now R. L. c. 147, §§ 5, 6,) to be held in place of the land. *Cary Library* v. *Bliss,* 151 Mass. 364. *Codman* v. *Crocker,* 203 Mass. 146, 150, and cases cited. *Sohier* v. *Massachusetts*

*General Hospital,* 3 Cush. 483, 496. *Clarke* v. *Hayes,* 9 Gray, 426. *Denny* v. *Mattoon,* 2 Allen, 361, 377, 378. *Boxford Religious Society* v. *Harriman,* 125 Mass. 321, 328. *Thissell* v. *Schillinger,* 186 Mass. 180. 6 Cyc. 967, 971. See Pub. Sts. c. 141, § 20; R. L. c. 147, § 15.

A period of ten years having elapsed negotiations took place which resulted in a sale, and although the provisions of the church discipline for the selection of trustees and sale of the property apparently had been complied with, the purchaser was not satisfied, and at the request of his conveyancer the trustees again sought the aid of the court. The record shows that Albert R. Whittier, the defendant in the suit then brought, was the only surviving trustee of those named in the first decree, or in the St. of 1892, c. 103. The present plaintiffs in the cross bill, Nies and Leonard, "being the stationed preachers now in charge of the Methodist Religious Society in Boston sometimes known as the Bromfield Street Methodist Episcopal Church," assented to the petition, and requested that the prayer for the appointment of the nine persons named as trustees under the deed made by William Hall Jackson be granted. By the decree entered January 17, 1913, with the consent of all parties in interest, the resignation of Whittier was accepted, and the new trustees were appointed "under the deed from William Hall Jackson to Amos Binney and others, . . . and as authorized in chapter 103 of the Acts of the year 1892."

The trustees so appointed were officers of the court, subject to its supervision and control, and being seised of the legal title under R. L. c. 147, §§ 5, 6, and having been empowered to sell, they could make, execute and deliver a valid conveyance of the property which the purchaser would hold discharged from the trust. A sale having been made, the trustees thereafter held the proceeds under the terms of the Jackson trust. *Bradstreet* v. *Butterfield,* 129 Mass. 339. *Sohier* v. *Massachusetts General Hospital,* 3 Cush. 483. *Chapin* v. *First Universalist Society in Chicopee,* 8 Gray, 580. *Hadley* v. *Hopkins Academy,* 14 Pick. 240.

We have reviewed the history of this trust at much greater length than would have been desirable if the plaintiffs, who do not question the validity of the purchaser's title, had not urgently contended that the trustees under the decree should be discharged and that the alleged trustees and their successors appointed solely

under ecclesiastical authority should be declared the trustees to administer the trust subject only to the rules and Discipline " of the Methodist Episcopal Church in the United States of America."

But even if the cross bill could be treated as in the nature of a bill of review, the decree of sale when read shows no error of law, and if the discretionary power of the court to vacate is invoked, the plaintiffs have failed to show any reasonable ground for such action. The equities are all against them, for the record is bare of any suggestion of accident, fraud or mistake, and some of them, as we have said, acting presumably under the advice of counsel, not only consented to, but asked for the relief granted. *Coghlan* v. *Dana,* 173 Mass. 421. *Gray* v. *Chase,* 184 Mass. 444. *Lakin* v. *Lawrence,* 195 Mass. 27. *Mulrey* v. *Carberry,* 204 Mass. 378; *S. C.* 207 Mass. 390. *Kapiolani* v. *Atcherley,* 238 U. S. 119.

While a majority of the present board are unwilling in the administration of the trust to accede to the views and desires of the plaintiffs and the minority agreeing with them, the cross bill under the prayer for general relief cannot be maintained for their removal. *Fordyce* v. *Dillaway,* 212 Mass. 404, 411. *Tempest* v. *Lord Camoys,* 21 Ch. D. 571.

Nor on the record has the doctrine of *cy pres* on which the plaintiffs further rely any application; "for that is to be applied in giving a new direction to a charity, only when it becomes necessary to do so to prevent the charity failing, because it cannot be applied agreeably to the literal intention of the donor." *Harvard College* v. *Society for Promoting Theological Education,* 3 Gray, 280, 301. And whenever a charitable trust can be administered in accordance with the directions of the donor or founder, this court "is not at liberty to modify it upon considerations of policy or convenience." *Jackson* v. *Phillips,* 14 Allen, 539, 591, 592. It is unnecessary to consider the question whether a case can be stated under which the doctrine will become applicable in the administration of the trust.

If the trustees appointed under the decree neglect or refuse to execute the trust, or abuse their powers, the Attorney General on his own initiative or at the relation of those who are beneficially interested can petition for their removal, and also can have relief in equity for an accounting, or, if the trustees are uncertain or are unable to agree among themselves as to their powers and duties,

they can ask for instructions making him a party defendant. R. L. c. 147, § 11; c. 159, § l. *Odell* v. *Odell,* 10 Allen, 1, 15. *Drury* v. *Natick,* 10 Allen, 169. *Jackson* v. *Phillips,* 14 Allen, 539. *Attorney General* v. *Garrison,* 101 Mass. 223. *Ripley* v. *Brown,* 218 Mass. 33. *Attorney General* v. *Bedard,* 218 Mass. 378.

We are of opinion for the reasons stated that the cross bill should be dismissed.

*Decree accordingly.*